# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## AT MARCH TERM, 1874.

THE STATE, FREDERICK G. AGENS ET AL., PROSECUTORS,, PLAINTIFFS IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF NEWARK, DEFENDANTS IN ERROR.

1. A statute authorizing the expense of paving the road-bed of a city street, to be assessed in the proportion of two-thirds on the property abutting on the street, and the remaining third on the public at large,. is unconstitutional.

2. Assessments for local improvements of this character may be made against the property peculiarly benefited, but such assessments must be made to the extent only of such peculiar benefits.

3. This rule does not apply to improvements of the sidewalk, which is to be regarded as subservient to the premises to which it is attached, and the expense of improving which may be charged wholly to the owner.

On error to the Supreme Court.

The 7th section of the charter of Newark (*Pamph. Laws,*, 1849, *pp.* 206, 207,) provides " that it shall be lawful for the common council, on the application of three-fourths of the owners of property in any street, to order the said street or section of the street to be graded, graveled, paved, flagged or-

planked, either in whole or in part, in such manner as they shall deem most advisable," &c., "and that after the said grading, graveling, paving, &c., is once effected, then the city shall take charge of and keep the same in repair, without further assessments." *Acts*, 1849, *pp*. 206, 207.

A section of Broad street, between Market street and the Morris canal, was originally paved under the foregoing provision, and had been now repaved, by virtue of the following section in the supplement to the charter passed 18th March, 1868, p. 411, viz. : "That when more than one-half of the owners of the frontage on the line of any street or section thereof, which is now paved, shall apply to have such street or section repaved, it may be lawful for the common council to order and cause the repaving thereof, and they shall assess upon the owners of the lots fronting upon the line of such streets or sections thereof, two-thirds of the costs and expenses of such repaving, and the city treasury shall bear the remaining one-third, and the city shall be entitled to all the old material; said assessment to be made in all respects as were required by the act to which this is a supplement, and the supplement thereto, in cases of original paving of streets."

The opinion of the Supreme Court will be found in 6 *Vroom* 168.*

For plaintiffs in error, *Thos. N. McCarter*.

The assessment, which is brought under review by this *certiorari*, is void, and should be set aside.

I. Because the law under which it was made is unconstitutional.

*a.* Because it impairs the obligation of a contract.

*b.* Because it takes private property for public use, without compensation.

*a.,* The assessment was made under the first section of a supplement to the charter of Newark, approved March 18th, 1868.

* The name of the prosecutor is erroneously printed "Agurs" in 6 *Vroom*.

Prior to that, the law in force was a supplement, passed in 1849. (*Pamph. L.* 203.)

It appears by the statement of facts that Broad street was paved in 1852, and in the following year the owners were assessed for the cost.

These facts created a contract between the state and the property owners, which exempted them from future assessments for repairing the pavement of that street.

The act of 1869 and this assessment under it, was a violation of that contract.

The city authorities were bound to "take charge of and keep in repair" a street so paved, without further expense to the owners.

Repaving is, in a legal sense, repairing; because a man who is under a contract obligation to keep in repair a building or other structure, is bound, under such contract, to rebuild when necessary.

*b.* The assessment violates the constitution, because it amounts to taking private property for public use without compensation.

It nowhere appears that the prosecutors or their property were benefited.

The assessment does not profess to have any regard to the benefits.

The act directs an arbitrary amount, viz.: two-thirds of the costs, to be assessed on the owners of the lots fronting on the line of the street, without regard to the benefits.

It was to be made according to the city charter.

That required a *just* and *equitable* assessment. *City Charter*, § 107; *Laws*, 1857, *p.* 167.

What was just and equitable was left to the judgment of the city surveyor, who was under no obligation to have regard to the benefits, or to limit his assessments to the amount of benefits the owners or their land derived from the improvement.

II. The ordinance was illegally passed.

*a.* The act of 1868, authorized the work to be done only when "more than one-half the owners of the frontage on the line of any street" shall apply to have such street   *   * re-paved.

The case shows that there were forty-nine "owners of the frontage," and that only twenty-four petitioned for the improvement.

*b.* The petition in this case asks for the paving of the whole street.

There was no application to the common council to pave a section of the street.

The ordinance was not warranted by the application.

III. The case shows that the so-called assessment was not an assessment, but a mere computation by the foot, without regard to the depth, value or location of the lots, or of the buildings thereon.

IV. The assessment itself is incongruous and contradictory, and was never legally ratified by the common council.

V. The assessment was for a greater amount than was authorized by law. It was for more than two-thirds of the cost.

For the defendants in error, *W. H. Francis* and *C. Parker.*

1. The provisions of section 1 of the act of 1868 are constitutional and valid, and do not impair the obligation of any contract.

2. Even if, by force of the operation of the provisions of said section 7 of said act of 1849, a contract resulted, in the matter of the original paving of said portion of Broad street, that contract could only extend to the keeping of the *original pavement in repair.*

3. The state could not lawfully make any such contract as that contended for by the prosecutors. *Cooley's Con. Lim.,*

(2d ed.) p. 282, note, &c., and cases therein cited, and including *Cruise on Real Prop.*, (*Greenl. ed.*) *Vol.* 2, p. 67, notes ; *Redfield on Railways* (3d ed.,) *Vol.* 1, p. 258.

4. The authorizing, making and imposing of the assessment in question was a lawful exercise of the taxing power, and not of that of eminent domain. *Cooley's Con. Lim.,* (*2d ed.*) 496, 497, 498, &c., and notes and cases cited, including *Williams* v. *Mayor,* &c., *of Detroit,* 2d *Mich.* 560; 31st *N. Y.* 583; *The State, Wm. Sigler, pros.,* v. *Edward Fuller, collector,* &c., 5 *Vroom* 237, &c., and the following references cited by Justice Bedle in said case: *The People* v. *City of Brooklyn,* 4 *Cons.* 430; *Sedgwick's Stat. and Con. Law,* 502, 503, and cases there cited ; *Hammett* v. *Philadelphia,* and cases cited in *Law Reg.,* *July,* 1869; *Northern Indiana R. R. Co.* v. *Connelly,* 10 *Ohio,* (*N. S.*) 159; *Commonwealth* v. *Woods,* 8 *Wright* 113; *Magee* v. *Commonwealth,* 10 *Wright* 359; *State* v. *Newark,* 3 *Dutcher* 192; *State* v. *Jersey City,* 4 *Dutcher* 506; see, also, *State, Parker, pros.,* v. *New Brunswick,* 1 *Vroom* 387; see also, *Dill. on Mun. Corp.,* (*2d ed.*) *Vol.* 2, *pp.* 694, 695, 696, 697, 698, 699, 700, &c., and the notes and cases cited on said pages; also, *Gordon* v. *Conness et al.,* 47 *N. Y.* (*2d Sickles*) 614; *Broadway Baptist Church et al.* v. *McAtee & Cassidy,* &c., 8 *Bush* 512.

5. It rests within the discretion of the legislature to declare the principle and apportionment of all assessments. *Emery* v. *San Francisco Gas Co.,* 28 *California* 346, and cases cited on page 352; *Garret* v. *City of St. Louis,* 25 *Mo.* 508; *State, Sigler, pros.,* v. *Fuller, collector,* 5 *Vroom* 234; *State, Hand, pros.,* v. *Council of Elizabeth,* 2 *Vroom* 551.

6. The legislature may lawfully delegate the power of taxation to municipal corporations. *Dill. on Mun. Corp.* (*2d ed.*) 687, 688, *note* 21, and cases cited; *Ganet's Appeal,* 9 *Casey* 100; 6 *Whart.* 44; *State* v. *Dean,* 3 *Zab.* 335; *State* v. *Branin,* 3 *Zab.* 494; *Hand* v. *City of Elizabeth,* 2 *Vroom* 47; *Cooley's Con. Lim.* (*2d ed.*) 190.

7. The petition was signed and the application for said repaving was made by "more than one-half of the owners of the frontage," in the full sense of section 1 of the act of 1868.

8. As to the excess of assessment insisted upon by the prosecutors, "*De minimis non curat lex.*" *Cooley's Con. Lim.* 520, 521, *and notes.*

9. The assessment was lawfully and properly made, and there is nothing in the case which would warrant the court in granting the relief asked for by the prosecutors, and the assessment and the judgment of the Supreme Court should be affirmed, with costs.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The writ in this case has brought before the court the proceedings in the assessment of the expenses incurred in re-paving the road-bed of a portion of one of the public streets in the city of Newark.   The cost of this work has been imposed in accordance with the direction of the legislative act authorizing these improvements, in the proportion of two-thirds of such cost on the owners of the lots fronting on the line of the section of the street thus re-paved, and the remaining third on the city treasury.

It thus appears that the statute in question undertakes to fix, at the mere will of the legislature, the ratio of expense to be put upon the owner of the property along the line of the improvement; and, the question is, whether such an act is valid.

The inquiry thus involved has, of late, been so exhaustively discussed in a crowd of judicial decisions, that I do not feel inclined to do more than so far to refer to general principles as may be necessary to explain clearly what I conceive to have been heretofore decided by this court.

The doctrine that it is competent for the legislature to direct the expense of opening, paving, or improving a public street, or at least some part of such expense, to be put as a special burthen on the property in the neighborhood of such improvement, cannot, at this day, be drawn in question. There is nothing in the constitution of this state that requires that all the property in the state, or in any particular subdivision of the state, must be embraced in the operation of every

law levying a tax. That the effect of such laws may not extend beyond certain prescribed limits, is perfectly indisputable. It is upon this principle that taxes raised in counties, townships, and cities, are vindicated. But while it is thus clear that the burthen of a particular tax may be placed exclusively on any political district to whose benefit such tax is to enure, it seems to me it is equally clear that, when such burthen is sought to be imposed on particular lands, not in themselves constituting a political subdivision of the state, we at once approach the line which is the boundary between acts of taxation and acts of confiscation. I think it impossible to assert, with the least show of reason, that the legislative right to select the subject of taxation, is not a limited right. For it would seem much more in accordance with correct theory to maintain, that the power of selection of the property to be taxed cannot be contracted to narrower bounds than the political district within which it is to operate, than that such power is entirely illimitable. If such prerogative has no trammel or circumscription, then it follows that the entire burthen of one of these public improvements can be placed, by the force of the legislative will, on the property of a few enumerated citizens, or even on that of a single citizen. In a government in which the legislative power is not omnipotent, and in which it is a fundamental axiom that private property cannot be taken without just compensation, the existence of an unlimited right in the law-making power to concentrate the burthen of a tax upon specified property, does not exist. If a statute should direct a certain street in a city to be paved, and the expense of such paving to be assessed on the houses standing at the four corners of such street, this would not be an act of taxation, and it is presumed that no one would assert it to be such. If this cannot be maintained, then it follows that it is conceded that the legislative power in question is not completely arbitrary. It has its limit; and the only inquiry is, where that limit is to be placed.

This question was considered, and, as it was supposed, was definitely settled by this court in the case of the *Tide Water*

*Company* v. *Costar*, reported in 3 *C. E. Green* 519. The principle sanctioned by that decision was, that the cost of a public improvement might be imposed on particularized property, to the extent to which such property was exceptionally benefited ; and that any special burthen beyond that measure was illegal. It was upon this principle that the case was rested. The rule thus adopted, stands upon the idea that it establishes a standard by which, with at least an approach to precision, an act of taxation may be distinguished from an act of confiscation. So far as the particularized property is specifically benefited, an exaction to that extent will not be a condemnation of property to the public use, because an equivalent is returned ; and this is the ground on which the abnormal burthen put upon the land owner is justified. Speaking on this subject, Chief Justice Green says : " The theory upon which such assessments are sustained as a legitimate exercise of the taxing powers is, that the party assessed is locally and peculiarly benefited over and above the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment." *State* v. *City of Newark*, 3 *Dutcher* 190. It follows, then, that these local assessments are justifiable, on the ground above, that the locality is especially to be benefited by the outlay of the money to be raised. Unless this is the case no reason can be assigned why the tax is not general. An assessment laid on property along a city street for an improvement made in another street, in a distant part of the same city, would be universally condemned, both on moral and legal grounds. And yet there is no difference between such an extortion and the requisition upon a land owner to pay for a public improvement over and above the exceptive benefit received by him. It is true that the power of taxing is one of the high and indispensable prerogatives of the government, and it can be only in cases free from all doubt that its exercise can be declared by the courts to be illegal. But such a case, if it can ever arise, is certainly presented when property is specified, out of which a public improvement is to

be paid for in excess of the value specially imparted to it by such improvement. As to such excess I cannot distinguish an act exacting its payment from the exercise of the power of eminent domain. In case of taxation the citizen pays his quota of the common burthen: when his land is sequestered for the public use he contributes more than such quota, and this is the distinction between the effect of the exercise of the taxing power and that of eminent domain. When, then, the overplus beyond benefits from these local improvements, is laid upon a few land owners, such citizens, with respect to such overplus, are required to defray more than their share of the public outlay, and the coercive act is not within the proper scope of the power to tax. And as it does not seem practicable to define the area upon which a tax can be legitimately laid, and beyond which it cannot be legitimately extended, and as there is, as has been shown, necessarily a limit to the power of selection in such instances, the principle stated in the case cited is, perhaps, the only one that can be devised whereby to graduate the power. Consequently, when the improvement, as in the present instance, is primarily for the public welfare, and is only incidentally for the benefit of the land owner, the rule thus established ought to be rigidly applied and adhered to.

With the doctrine thus expounded, the case of *The State, Sigler, pros., v. Fuller, 5 Vroom* 227, is not in harmony. This was an assessment for the improvement of a sidewalk, and in that feature differed from the present one, which is for the improvement of the road-bed. I think the difference is a substantial one. A sidewalk has, always in the laws and usages of this state, been regarded as an appendage to, and a part of, the premises to which it is attached, and is so essential to the beneficial use of such premises, that its improvement may well be regarded as a burthen belonging to the ownership of the land, and the order or requisition for such an improvement as a police regulation. On this ground I conceive it to be quite legitimate to direct it to be put in order at the sole expense of the owner of the property to which it is subservient and indis-

pensable.    But in the reported case there was another circum-
stance which illegalized the proceedings.    A part of the
expense of constructing the sidewalk on one side of the street
was thrown on the owners of the other side of the same street.
The portion of the burthen thus transferred was one-sixth of
the expense, and it was directed to that extent to be imposed
irrespective of the amount of any ascertained benefit conferred.
This brought the case within the prohibition inherent in the
rule laid down in the Tide Water case, so that the proceedings
should have been set aside.    The suggestion that in this class
of cases it will be presumed that the benefits equal the bur-
then imposed until the contrary is shown, cannot prevail.    If
well founded, it would have led to a different result in the
Tide Water case.    The only safe rule is that the statute author-
izing the assessment shall itself fix, either in terms or by fair
implication, the legal standard to which such assessment
must be made to conform.    In no other way can property be
adequately protected.

The other objections, raised by the counsel of the plaintiff
in error, do not seem to me well founded.    I can perceive no
solid foundation for the position that the law under which
the assessment in question has been made, raises up a contract
between the land owner and the public.    This statute declares
that it shall be lawful for the common council, on the appli-
cation of three-fourths of the owners of property in any street,
to order, &c., and it then adds, "that after such grading, &c.,
is effected, then the city shall take charge of and keep the
same in repair, without further assessment."    The argument
was, that after the land owners had petitioned, and the work
was done, a bargain was constituted, the essential stipulation
of which is that the expense of keeping the street in order
shall be borne by the public.    But how is this language to
be converted into that of contract?    It is not so in form, for
it makes no offer to the land owner.    Nor is the substance
with which it deals the subject matter of agreement.    It does
not purport to ask from the citizen any thing which the state
has not the right to demand.    The purpose is to define the

mode and the extent of the legislative power of the municipality. The power conceded might have been given in an unqualified form, but its exercise was restricted with the condition that it should not be used unless a certain proportion of the owners of property consented, and that the power should not be used a second time. But these limitations on the prerogative of local legislation are concessions to the citizen, and cannot, with any show of reason, be transformed into considerations moving from the citizen to the state on which a contract can be built up. The admission of such a doctrine would carry many mischiefs with it. Agreements could be inferred from a large number of the ordinary acts of legislation. Public roads are laid on the application of a certain number of freeholders, and the statute directs "that after such roads are laid they shall be opened and maintained at the public expense." Why, under such circumstances, cannot a contract be claimed as well as in the case now in hand? Numerous other examples of laws, from which, by the same course of reasoning, contracts might be deduced, will readily occur if the mind is given to the subject. Neither do the decisions which were cited lend, as it appears to me, the least countenance to the doctrine in question. They are all cases outside of the ordinary field of legislation, and in which the citizen was induced to do some act, or yield up some right or property which could not be taken from him except by his voluntary cession. The true principle undoubtedly is, that when it is alleged that any part of the sovereign power has been parted with, by force of an agreement, such agreement must be clearly manifested. The cases are largely collected in the excellent work of Chief Justice Cooley, on *Constitutional Limitations, page* 280. The language of the present statute has not such an aspect, and the intendment that it was the intention to give up forever any part of the public control, with respect of the mode of keeping in order the streets of a great city, is not to be entertained for an instant. This exception to the proceeding cannot be sustained.

On the other points raised on the argument, I agree with the views expressed in the Supreme Court.

There are other legal difficulties in the mode of making assessments under the statutory provisions above criticised, which were not stated on the argument, which I shall not further notice than to intimate that I am not to be understood as sanctioning them by my silence.

On the ground first above stated the judgment should be reversed.

*For reversal*—The CHIEF JUSTICE, SCUDDER, CLEMENT, DODD, GREEN, LATHROP, LILLY.   7.

*For affirmance*—DALRIMPLE.