THE STATE, M'CLOSKY, PROSECUTOR, v. CHAMBERLIN ET AL., COMMISSIONERS, &c.

1. A surface tax on a drainage district for the purpose of defraying the expense of running and maintaining engines which are part of a sewage system, cannot be sustained as an assessment, because it is not graduated by the benefit imparted to the land to be assessed; nor can it be maintained under the taxing power, where the drainage district is not co-extensive with the political or municipal district of which it is a part. It must be made to fall upon the entire political district.

2. A taxing act is fatally defective if the legislature does not designate the property out of which it is to be made, and prescribe a mode for enforcing it.

3. The act to establish a system of sewage in this case being unconstitutional as to some of its provisions, so that the scheme adopted cannot be made available, the undertaking will be arrested in its incipient stage.

4. This is not a case in which the unconstitutional features of the law may be rejected, and the work allowed to proceed under parts of it which are valid.

On *certiorari.*

Argued at November Term, 1874, before Justices VAN SYCKEL and WOODHULL.

For the plaintiff, *Dixon.*

For the defendant, *Besson.*

The opinion of the court was delivered by

VAN SYCKEL, J.  By an act of the legislature, approved March 27th, 1874, (*Laws,* 1874, *p.* 559,) parts of the city of Hoboken and the township of Weehawken were divided into two drainage districts, and a board of commissioners was constituted with power to construct in said districts such main and lateral sewers as will effectually drain the same.

The plan adopted by this act is the making of deep sewers out of which the sewage water is to be pumped by steam power.

On the 10th day of September last the commissioners entered into a contract for the execution of the work, and on the 19th day of the same month a *certiorari* was sued out to remove their proceedings into this court.

The objections taken to the validity of these proceedings are fundamental, and the question is made whether this law can be enforced in any manner as it is now framed.

It is insisted in the first place that there is such uncertainty in regard to what commissioners shall exercise the granted powers, that the act is inoperative.

The act of 1873, (p. 799, § 1,) to which the act in question is a supplement, provides that Charles Chamberlin, John Reid and John Frost shall be the commissioners to construct a main sewer and such lateral sewers as may be necessary in Hoboken and Weehawken. Section 1 of the act of 1874, appoints the same commissioners named in the act of 1873, and by its 14th section provides that the number of commissioners shall be increased from three to five, and that for this purpose two shall be nominated by the mayor and confirmed by the council, in addition to those specified in the act of 1873, the said commissioners to hold office respectively for the term of one, two, three, four and five years, to be determined by ballot among themselves. Reading these two acts together, it is clear that authority to execute the proposed improvement is vested in the three commissioners named in the act of 1873, and the two to be appointed by virtue of the 14th section of the act of 1874.

The other objections to the validity of the act are based upon the alleged absence of any legal provision in it for meeting the necessary cost of the enterprise. The proposed improvement will be a costly one, and therefore the system provided to raise the funds to pay for it is of primary importance.

The methods of raising money prescribed by the act are four-fold.

First, by surface tax in each drainage district for the purpose of defraying the expenses of running and and maintain-

ing engines and pumps, which surface tax is to be uniform on every lot of twenty-five by one hundred feet, or for a larger or smaller lot, according to the surface thereof.

As a special tax or assessment which embraces the property benefited, this cannot be sustained. It is arbitrarily fixed by the legislature, and is not graduated or limited by the benefit received. Nor can it be maintained, as the ordinary or general tax which is imposed on all persons or property, for which the tax payer is supposed to receive in compensation the protection which government affords to his life, liberty and property, and incidentally an increase in the value of his possessions.

The proposition that the power of the legislature over the subject of taxation is unlimited, must be understood with some qualifications. This essential attribute of government, when abused, becomes usurpation, so that any unlawful assumption of power under it may be successfully resisted. Of necessity, the discretion in the choice of ways and means for supplying the public treasury must be very wide, and it will be much easier to state instances in which the attempt to exercise it would be an encroachment, than to define with precision the scope and extent of the power itself. The legislature may establish, at discretion, special taxing districts, but within the territory so selected, a just standard of taxation must be adopted.

In *The State, ex rel. Trustees, &c.,* v. *Readington,* 7 *Vroom* 66, this court did not intend to give its sanction to the doctrine that the power of the legislature in this direction was without limitation.

In The State, Agens, pros., v. Newark, the Chief Justice very clearly expressed his view to be, that " the legislative right to select the subject of taxation is limited, and the power of selection cannot be contracted to narrower bounds than the political district within which it is to operate." If this is not regarded as the extent to which the exaction can be enforced, it would be competent for the legislature to constitute a taxing district of the territory within a radius of five hundred feet of the public buildings of a municipality, upon which the entire

cost of lighting, repairing, and maintaining such buildings should annually fall, and lands to the depth of one hundred feet on either side of a street might be formed into an improvement district, upon which the expense of grading, paving, and improving the street could be imposed without regard to any special benefit to be derived from the work. Thus, if the legislative will is untrammeled by the simple device of creating a taxing district out of any area, however small, private property within it might, without any regard to resulting advantage, be confiscated under the form of ordinary or general taxation, and the protection which it has heretofore been supposed our fundamental law secured to individual property rights, and which has so frequently been recognized and enforced by our courts, would be swept away.

The district over which the law now under examination is to operate, is not co-extensive with the political or municipal division of the state, of which it is a part. The proposed scheme is primarily for the public welfare, and incidentally for the benefit of the land owner  Its cost, to the extent of the special value imparted to the lands within this district might, under proper provision for the purpose, be assessed upon it; whatever is in excess of that must, in the exercise of the general taxing power, be thrown upon the entire political district. This is a most salutary rule, free from any difficulty in its application, and is essential to secure to private property immunity against oppression.

The authority granted by our school law to school districts to raise money by taxation to build school houses, and maintain free schools, which has been exercised so long, without challenge, is apparently in conflict with this doctrine, and, if it can be defended, must be regarded as an exceptional case. The extent of this power it is not necessary to discuss—it is sufficient to say, that it is not absolute, for it will be conceded that the assessment of one school district, for the exclusive benefit of another, would be a palpable trespass upon the rights of private property.

The second mode of raising money is by special tax on the

drainage districts in proportion to the amount expended in each for the purpose of paying interest on the bonds and improvement certificates issued to buy engines, pumps, building and all other drainage implements, and for constructing the main sewers. The mayor and common council are authorized to levy this tax.

There is no expression of the legislative will by which it appears whether this tax is to be levied on the lands within the district, or on the personalty, or on both. Nor is any machinery provided by which the mayor and council may enforce the levy. These are fatal defects in a taxing act. The legislature must designate the property out of which the imposition is to be raised, and prescribe the mode in which it may be collected. Besides these imperfections the enactment is radically faulty in attempting to confine this burden to the drainage district. *State, Gaines, pros.,* v. *Hudson County Avenue Com'rs, ante p.* 12; *State, Agens, pros.,* v. *Mayor, &c., of Newark, post.*

The 6th section authorizes the commissioners of assessment to assess upon the district drained the whole cost of completing the main sewer and the pumping works, and section 7 empowers them to make a like assessment for cost of the lateral sewers. Neither of these sections contain the elements of a constitutional assessment, and unless they are supplemented by other legislation, limiting the burden to the benefits flowing from the enterprise, the relators can successfully invoke judicial interference to prevent the enforcement of the law.

Sections 6 and 7 direct the commissioners, after the work is completed, to ascertain the whole cost and certify the same with a list of the property drained to the commissioners of assessments for street improvements in Hoboken, who shall proceed to make the assessment upon the district drained.

These commissioners of assessments for street improvements are appointed by virtue of the 17th section of the act of 1871, (*Laws,* 1871, *p.* 1421,) which directs that said commissioners shall make all assessments hereafter to be made for improvements in said city in the manner directed in the act to which it is a supplement, and the several supplements thereto.

State, M'Closky, pros., v. Chamberlin.

The charter of the city of Hoboken, (*Laws*, 1855, *p.* 448,) by its 52d section, provides that all assessments for improvements shall be made upon and paid by the lands and real estate benefited by the same, in proportion to the benefit received.

Reading these acts together, a constitutional mode is pointed out for ultimately paying for the construction of the main and lateral sewers and the pumping works, but no legal method is provided for meeting the expense of running and maintaining the engines and pumps, which will be a continuing, perpetual tax, nor for that part of the cost of construction, which, under section 5, is to be imposed on the drainage district in the form of interest on the improvement bonds until such time as an assessment can be made under the subsequent sections. Under the rule that the unconstitutional features of a law may be rejected, and the valid parts be permitted to stand, can the defendants be allowed to carry on this undertaking to its completion, and thus create a lien on the lands within the district to the extent of its cost? The difficulties in the way of adopting this view cannot be surmounted. The testimony shows that the sewer to be constructed is of such character that engines and pumps are necessary to its utility, and that unless such engines and pumps are run and maintained, the scheme will be wholly unavailable. The system of sewage, by reason of these imperfections being utterly unprofitable, and the commissioners having no ability to utilize it, as the law now is, no assessment could justly be made under the 6th and 7th sections of the act in question. Nor can it be presumed that the legislative will would be carried out by rejecting the unconstitutional clauses, and allowing the work to proceed. The legislature considered and passed upon the system as an entirety, with the design of establishing a thorough and effective drainage. To ascribe to it the intention of enabling so heavy a burden to be laid upon the relators, when a vital part of the law, which has been enacted, is void, would be unauthorized. The scheme, so far as it could be promoted, under the

State, Van Cleef, pros., v. Commissioners, &c., of New Brunswick.

power legally conferred, would·be practically useless. The authority given by the act to assess is based upon the grant of power to perfect the enterprise as an entirety ; the latter failing in a material respect, the former cannot attach. The right to assess is not granted until the plan adopted is complete in all its parts. This seems to be the only just interpretation of the legislative will. Where, as in this case, the scheme entered upon cannot be fully executed and perfected to any beneficial end under the existing law, property rights should not be oppressed with heavy taxation and be compelled to run the risk of a further legislative grant, which may never be accorded. I do not intend to say that a system of drainage, which requires no application of power to effect its flowage, cannot be constructed under this enactment, but that the defendants having adopted a system, which the act gives them no legal power to make available for any useful purpose, the project should be arrested in its incipient stage. *In matter of application, &c., between Lower Chatham and Little Falls,* 6 Vroom 501.

The proceedings in this case must be set aside, with costs.

Justice WOODHULL concurred.