THE STATE, JOSEPH H. BALDWIN ET AL., PROSECUTORS,
v. EDWIN C. FULLER, COLLECTOR.

While the burthen of a particular tax may be placed exclusively upon
any political district to whose benefit such tax is to enure, the legisla-
ture has no power thus to impose it upon any territory narrower in
bounds than the political district of which it is a part, without having
regard to the special benefits which may accrue to those upon whom
it is made to fall.

On *certiorari* to remove the assessment for the costs and
expenses of lighting the road in a lamp district, in the town-
ship of Montclair.

Argued at February Term, 1877, before Justices DEPUE,
SCUDDER and VAN SYCKEL.

For the plaintiff, *Joseph L. Munn.*

For the defendant, *John L. Blake.*

VAN SYCKEL, J.    In 1875 the legislature passed an act
making it lawful for the township committee of the township
of Montclair, in the county of Essex, upon petition in writing,
of the owner or owners of more than half the lands lying
upon any public road or roads, or any part or parts thereof,
to create and establish a lamp district or districts, for the light-
ing of said road or roads with gas or oil, and take all necessary
measures therefor, including the providing and erecting of posts
and lanterns, and to make and enter into contract with any
person or persons, company or companies, for all purposes
whatsoever, in relation thereto, and to cause the yearly ex-
pense thereof, with cost of posts and lamps, to be assessed and
collected, one-half part upon and from all taxable property
within the limits of said district or respective districts, and one-

half part of said cost to be assessed and collected from the land or lands on each side of the road or roads, or part or parts thereof lighted, (in proportion to lineal feet), in the same manner as other township taxes are or may be assessed or collected. *Laws*, 1875, *p.* 579.

Under authority of this act, the township committee established a lamp district, including the lands of the prosecutors, and assessed one-half the cost and expense of lighting the road upon the taxable property in said lamp district, and the other half upon the lands in said district fronting on said road, in proportion to the lineal feet of frontage.

The prosecutors, who are burdened with the assessment in both forms, have sued out this *certiorari* to test the legality of the imposition.

The objection to it is radical, denying the power of the legislature to authorize it in the form in which it is laid.

Under the theory of our state governments, all essential attributes of sovereignty, not expressly withheld or reserved, vest in the state. The general proposition, therefore, that the taxing power resides in the government, as part of itself; that it is inherent and need not be expressly reserved, and that it may be legitimately exercised, on the objects to which it is applicable, to the utmost extent to which the legislature may choose to carry it for lawful purposes of taxation, will not be controverted.

Assuming this to be true, it is contended that the power of taxing and the power of apportioning taxation are identical and inseparable; that without the latter the former cannot be beneficially exercised; that there is no constitutional restraint upon legislative action in either of these respects, and that, therefore, the power of assigning to each individual citizen his share of the public burden, is practically unlimited.

Slight reflection will show that this statement is too broad, and that any argument based upon it must be unsound. The difficulty lies, not in the taxation, but in the apportionment of it; in the attempt to establish in the state a power of selection

State, Baldwin, pros., v. Fuller.

co-equal with and as unlimited as the right to levy contributions, to enable it to dispense its needful powers.

That the legislature may designate certain occupations, trades, or employments as special subjects of taxation, or discriminate between different kinds of property in the rate of taxation, or apportion the tax among classes of persons or property made liable to taxation, in such manner as may seem fit, provided it is apportioned upon the rule of uniformity, may be conceded. From the operation of such laws, no injustice necessarily flows. The class of tradesmen upon which they act, must add the burden to the selling price of their wares, and thus, ultimately, it is distributed over the community with an approximation to equality. Where real estate is selected to bear the heavier load, uniformity is still preserved—it acts on each and all in their turns, as they become owners of lands, and ceases to be exacted of them, when they no longer hold the estate in respect of which the duty is required.

But it seems equally clear that a tax for state purposes must fall upon the state at large; for county purposes, upon the county; and for the public uses of any lesser political district, upon such district. The county of Hudson could not be required to defray the entire expense of the state government, nor could one township, in that county, be compelled to yield the whole revenue necessary for county purposes; nor could the legislature impose upon a single citizen the whole burden of taxation in the township in which he may reside. Any such fiscal scheme would be pronounced, by the common judgment of mankind, so contrary to the principles of natural justice, that we would be driven to conclude that there was some radical error in the premises upon which its justification was grounded. Not that courts may pronounce a law which it is within the general sphere of legislation to pass, to be void merely because it is, in their judgment, contrary to the principles of equity. The rule is conceded to be otherwise, but there are some things so repugnant to our sense of justice, that we cannot admit that they are comprehended,

in our system, in the powers of government. As an instance, we unhesitatingly declare that the legislature cannot make a man to be a judge in his own case. Aside from this consideration, laws of the character specified would, to the extent that one man's property is appropriated by them, in excess of his just contribution, to relieve others of a public burden properly resting upon them, take private property for public use, without just compensation. It would be confiscation, not taxation. As we approach the extreme limit of the power of apportionment, the violation of principle will be less striking, but it will still be so apparent that it cannot escape judicial observation. No one will question the right of the city of Trenton, under legislative authority, to grade, pave, and sewer its streets, and include the expense in the general tax levy, while an attempt to impose the cost of such work, in excess of any special benefits actually conferred, upon a taxing district less than the political district of which it is a part, would be instantly arrested by an appeal to the appropriate judicial tribunal. The reason upon which this well-settled doctrine, in this state, is rested is, that it would be a violation of our constitutional provision "that private property shall not be taken for public use without just compensation." In other states, arbitrary exactions of this character have been sanctioned, on the ground that the principle upon which taxation is founded is, that the tax-payer is supposed to receive just compensation in the benefits conferred by the government under which he lives, and that the law-maker is the sole judge as to whether the benefits received are commensurate with the burdens imposed. Upon this theory, in *People* v. *Lawrence*, 41 *N. Y.* 123, the cost of paying a railroad company for relinquishing their right to use steam in the city, with the cost of closing their tunnel and grading the street over it, was laid, without reference to actual benefits, upon specified property in the vicinity of the improvement. To justify this conclusion, the court declared that the right of determining what portion of the public burden, by way of taxation, shall be borne by any individual or class of individuals, is, in the legis-

lature, absolute; and, however much abused, can be redressed only by legislative enactment. . This is an assertion of power little, if any, less than despotism wields over the property of its subjects in like cases.

In the later case of *Gordon* v. *Cornes*, 47 *N. Y.* 608, Judge Rapallo, after stating the rule in terms equally broad, is constrained to remark that " It would be going too far to deny that the provisions of the constitution, which declare that no person shall be deprived of property without due process of law, and that private property shall not be taken for public use without just compensation, would afford protection to the citizen against impositions made, nominally, in the form of taxes, but which were, in fact, forced levies upon individuals, or confiscations of private property, as, for instance, if the general expenses of the government of the state, or of one of its municipal divisions, should be levied upon the property of an individual or set of individuals, or, perhaps, upon a particular district."

But why is it conceded that the general expenses of one of the municipal divisions of a state cannot be levied upon an individual, or upon a particular district? Obviously, because the purpose being a public, not a private one, it would be the taking of private property for public use without compensation. The exception put by the learned judge, is a striking one, but the same .test applied to any enactment which produces a like effect, though in a less measure, must as surely condemn it.

In the cases reported in 34 *Barb.* 69, 37 *N. Y.* 267, and 47 *N. Y.* 612, cited by Mr. Cooley, in support of the doctrine that the power of apportionment is absolute in the legislature, and the right to assign taxing districts unlimited, the question now presented was not essentially involved, and it was not necessary to take such extreme ground to justify the several judgments pronounced by the court. In all those cases, by the express provisions of the legislative enactments, the burden was laid, not arbitrarily, but in proportion to the benefits received.

The views expressed in the opinions of the court in these New York cases, were adopted, to some extent, in *State, Sigler, pros., v. Fuller*, 5 *Vroom* 227, and led to a result which our court of last resort subsequently declared not to be in harmony with the *Tidewater case*, 3 *C. E. Green* 518; *State, Agens, pros., v Newark*, 8 *Vroom* 415.

The suggestion in the Fuller case, that the benefits will be presumed to equal the burdens of taxation was repudiated, and it was admitted that, if well founded, it would have led to a different result in the Tidewater case.

Under the firmly established doctrine of the Agens case, that an assessment for paving the road-bed of a street cannot be laid upon lands supposed to be peculiarly benefited, in excess of the benefit conferred, how could the cost of maintaining and repairing such pavement be imposed upon such lands, regardless of benefits; or, how can the cost of any other project for public uses be imposed upon a locality arbitrarily selected, without violating the principle upon which that case rests? If the cost of putting up lamps and lighting the street can be levied arbitrarily upon the owners of lands along the street, why will not the doctrine that the power of the legislature to create special taxing districts is unlimited, justify the laying of the burden upon any one or two owners of lands fronting on a given street, in ease of all others? The Supreme Court, in *State, McClosky, pros., v. Chamberlin*, 8 *Vroom* 388, supposed that such power did not exist; for, as suggested in that case, if the legislative will, in this respect, is untrammeled by the simple device of creating a taxing district out of any area, however small, private property within it might, without any regard to resulting advantage, be confiscated under the form of ordinary taxation, and the protection which it has heretofore been believed that our organic law secured to individual property, and which has so frequently been asserted and enforced by our courts, would be swept away.

The theory of taxation is that it is levied for public purposes; that it is an attribute essential to the existence of government, without which it would be powerless to discharge its

functions, and for that reason it is held to be inherent. It is the public use for it which marks it as a tax. Where no public end is subserved, the power cannot be called into action. The levying of money from the public to erect a house for A, in which the public had no concern, would not be an act of taxation; it would be confiscation. Special peculiar benefits may result incidentally to the individual citizen, but to impress the imposition with the character of taxation, it must be primarily for public uses. If the work concerns the public, its cost, in excess of peculiar local benefits, must fall upon the public, according to some established rule of uniformity. If the project, authorized by the act now under consideration, is purely for the benefit of the persons whose lands front on the street, the taxing power cannot be called into requisition to enforce its execution; it would be a matter as exclusively within the control of private enterprise as the re-modeling of houses on the street, or the planting of fruit trees in the gardens.

Legislative interference to promote the scheme, can be legalized only upon the assumption that it is a public matter, affecting the welfare of the political district within which the legislative enactment is to operate.

To the extent that a locality is peculiarly benefited, the legislature may, at will, declare it to be a special taxing district, for the purpose of bearing the burden, and provide a way in which such special benefits shall be computed and levied; but to impose upon A, because he chances to reside upon a certain street where the work is done, or the expense incurred, so much of the cost as enures to the public benefit, in which he has no greater interest than any other citizen, would violate established principles as clearly as if the expenditure had been incurred in a part of the township remote from him. The existence of such power can be maintained only by asserting that the law-maker is the final arbiter who is to determine whether the individual citizen derives such benefit from any given measure as will justify the burden cast upon him; a doctrine which has hitherto found no countenance in our courts.

I think the true rule, deducible from sound reason, is, that legitimate taxation is limited to the imposing of burdens, like those in question, so far as they are for the public benefit, upon the persons or property within the political district possessing powers of local government, so that the exactions are distributed over the entire territory, upon the rule of uniformity. If the constitutional guarantee is not so interpreted as to enforce this rule, the legislature may, under the guise of taxation, appropriate private property to any extent to public use, without compensation. That this was the view entertained by the Chief Justice in Agens v. Newark, may be fairly inferred from his lucid opinion in that case, and it was so understood by this court, in State v. Chamberlin, before cited.

In the Agens case, the court say, " That there is nothing in the constitution of this state that requires that all property in the state, or in any particular subdivision of the state, must be embraced in the operation of every law levying a tax.

" That the effect of such laws may not extend beyond certain prescribed limits, is perfectly indisputable. It is upon this principle that taxes raised in counties, townships and cities are vindicated. But while it is thus clear that the burthen of a particular tax may be placed exclusively on any political district to whose benefit such tax is to enure, it seems to be equally clear that when such burthen is sought to be imposed upon particular lands, not in themselves constituting a political subdivision of the state, we at once approach the line which is the boundary between acts of taxation and acts of confiscation. I think it impossible to assert, with the least show of reason, that the legislative right to select the subject of taxation is unlimited. For it would seem much more in accordance with correct theory to maintain that the power of selection of the property to be taxed cannot be contracted to narrower bounds than the political district within which it is to operate, than that such power is entirely illimitable." The court further declares that these local assessments are justifiable, on the

ground that the locality is especially benefited by the outlay of the money to be·raised, and that unless this is the case, no reason can be assigned why the tax is not general.

The rule adopted in this case did not depend upon any peculiarity in the nature of the undertaking which gave rise to the assessment ; it must have been a public improvement to justify legislative coercion in any form. It was declared to be a limitation upon the power of taxation, and as such it must be of universal application. The legal principle must be the same whether the public benefit flows from the grading and paving of the road-bed, or from maintaining and keeping it in repair, or from erecting posts.and lamps and supplying gas to illuminate the highway. The obnoxious feature of the assessment in the Agens case was, that the tax for a public benefit was arbitrarily laid upon a specified locality, narrower than the political district of which it was a part.. The tax now certified into this court has manifestly the same vice, and the like limitation upon the power of selecting the subjects upon which it is to fall must be enforced.

Taxation is tolerated, as the contribution of each one's proportion to the support of his government, only to serve public ends, and must, from its very nature, be imposed upon the public. This is fundamental in the idea of a tax. Any attempt to appropriate the property of a designated locality, to discharge the duty which an entire community owes to its local government, must be regarded as a proceeding in which an essential attribute of taxation is absent, and as a palpable perversion of the true principle upon which the taxing power is based.

No one would assert that it was a legal exercise of the taxing power, to enact that the residents on a block of a certain street in a city should be required to pay the annual salaries of all city officers, because that would imply a right to cast upon a single citizen the entire expenses of the state.

The confusion arises in those cases where special benefits, to a large extent, are supposed to be incidentally imparted by a public enterprise to adjacent lands. But after eliminating

from the whole expenditure the sum which represents the value of such special benefits, in what respect does the balance, which represents the benefit which the general public actually derives from the undertaking, differ in character from the salaries paid to public officers?

Upon what principle can it be imposed upon a selected few?

It seems apparent that it can be legalized only by conceding that the power of the legislature to select subjects of taxation is wholly illimitable. So firmly was this view impressed upon the mind of the Chief Justice, that, in the Agens case, he placed the right to assess upon the land-owner the cost of paving his sidewalks, upon different ground from that on which it was sanctioned by the Supreme Court in the Fuller case, and pronounced the judgment of the Supreme Court to be erroneous in so far as it legalized the assessment upon the relators for any part of the cost of paving on the opposite side of the street. There is nothing in this opinion of the Court of Errors relating to sidewalks, that will justify the advanced step that is now proposed to be taken.

It is suggested that this tax may be regarded as a legitimate exercise of the police power, but this does not remove the radical objection to it. The vice, inherent in the character of the proceeding, is, that in effect it takes private property for public uses without compensation, and it cannot be purged of this infirmity by shifting the ground upon which it is exacted. It is difficult to define the precise extent of police powers. In theory, their primary object is regulation, the raising of revenue being merely incidental. In some adjudications, so wide a range has been given to this power, that under it assessments for sewers have been wholly imposed upon adjacent lands, without regard to accruing benefits. In this state these powers have been hitherto held within much narrower limits; and if it could be successfully invoked to support sewer assessments, and impositions like the one in controversy, it would practically overthrow a rule which is now the accepted law of the state.

The authority granted by our school law to school districts,

to raise money by taxation to build school-houses and maintain free schools, is apparently in conflict with the conclusion I have reached, but that must be regarded as an exceptional case. The power of the legislature over the subject is certainly not absolute, for it will be conceded that the assessment of one school district for the benefit of another would be a palpable trespass upon the rights of private property. There are, however, features in this matter of school taxation which distinguish it from any other case that now occurs to me. It is a district incorporated for an object affecting only those residing within it. They have absolute control of the question whether money shall be raised, and the facilities it affords for acquiring an education are limited to those upon whom the burden is cast.

Another marked distinction is, that the school-tax is not laid upon lineal feet of land arbitrarily selected, or on those, exclusively, residing along a particular street. When an attempt shall be made to impose a school-tax in that mode, I think there will be no difficulty in concluding that it contravenes the organic law. With regard to road districts, any scheme by which the cost of the improvement or paving of road-beds is assessed upon the lands adjacent thereto, without any regard to accruing benefits, must be viewed as a subterfuge to escape the doctrine of the Agens case.

That class of cases represented by *State, Hoey, pros., v. Collector of Ocean Township, ante p.* 75, is clearly distinguishable in principle from the one under discussion.

The act under which the Long Branch assessment was levied, (*Laws*, 1867, *p.* 976,) erects a local government within certain specified boundaries, for designated objects; and for the purpose of enabling the constituted authorities to exercise the particular functions with which they are invested, the power of taxation, according to a rule of uniformity, is granted.

Justice Knapp, in his opinion, clearly had in view this distinction, in stating " that the objects of government for which the tax is laid, are committed to the control of the corporation

by the legislature." The local government, in such cases, is of a dual character, certain powers being peculiar to the lesser district, while, as to the residue, it is subject to the authority of the larger municipality.

The city of Plainfield and the village of Flemington are examples in point. As to those subjects over which powers of local government are ceded by the legislature, the territory embraced in the act becomes a political district, subject to taxation according to the constitutional limitations which apply in other like cases.

The recognized methods of taxation are adequate for all the purposes of government, and, under them, its burdens may be distributed upon just principles.

In my opinion, the assessment certified here by the prosecutors is without authority, and should be set aside, with costs.

SCUDDER, J., concurred; DEPUE, J., dissented.