30 N.J. Super. 509 (1954)
105 A.2d 420
VIOLA V. JARDINE AND JOHN I. HOWE, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF RUMSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1954.
Decided May 25, 1954.
*511 Before Judges CLAPP, FREUND and SCHETTINO.
Mr. Thomas V. Jardine argued the cause for plaintiff-appellant John I. Howe (Messrs. Carey, Schenk & Jardine, attorneys).
Mr. William R. Blair, Jr., argued the cause for defendant-respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This is an appeal of plaintiff Howe from the judgment of the Superior Court, Law Division, in favor of defendant in plaintiff's action in lieu of prerogative writ to review an ordinance of defendant, and a levy made under and by virtue of the provisions of an ordinance adopted pursuant to R.S. 40:63-39.
By ordinance adopted June 26, 1941 and under R.S. 40:63-32 et seq., the Borough of Rumson established "The First Sewer District of the Borough of Rumson" which is part of and geographically smaller than defendant borough. Thereafter, the sewerage plant and system situate in and *512 serving the district was acquired by defendant from a private corporation. Plaintiff Jardine received notice of and made no objection oral or written to the adoption of the ordinance by which the district was established.
The cost of acquisition of the sewer system in 1942 was assessed solely against each landowner within the district as a local improvement under R.S. 40:63-38 in direct proportion to the benefit he derived from the sewer in accordance with the finding of special commissioners. In 1951 the district installed a new disposal plant, the cost of which was assessed against each landowner in a similar manner. In neither case was plaintiff's land taxed by the commissioners because they found it had derived no benefit from the sewer system.
On February 26, 1942, and annually thereafter, defendant enacted ordinances to provide funds to meet the expense of operating and maintaining the sewerage disposal system. All of the ordinances are identical, except as to their respective dates of adoption, amounts to be levied and rates, and were adopted under the provisions of section 2 of the ordinance establishing the district and of R.S. 40:63-39.
These annual levies were imposed upon all the lands and real estate within the sewerage district  whether or not the lands involved could connect with the sewer system. The ordinance under attack was passed February 26, 1953.
At and prior to the creation and establishment of the sewer district, plaintiff Jardine was the owner of real property known as 16 Packer Avenue, situate within the sewer district. Title thereto was conveyed to plaintiff Howe on October 21, 1952.
The Law Division found as a fact that plaintiff Jardine had knowledge as early as 1941 of the fact that no main pipe of the sewerage system extended past her property on Packer Avenue and that in 1942 plaintiff had knowledge of the ordinance adopted in that year and of the levy made thereunder. Plaintiff Jardine paid all of the levies until October 21, 1952, when she sold her property to plaintiff Howe.
*513 Plaintiff Jardine took no action to review the validity of any of the levies until August 1951, when she filed with the county board of taxation a petition for the reduction and removal of the 1951 levy. The petition was dismissed by the board for lack of jurisdiction on November 8, 1951. Plaintiff Jardine instituted the present action in August of 1952. After the purchase of 16 Packer Avenue, plaintiff Howe was admitted to the action as a party plaintiff by order made January 9, 1953. The amended complaint of Howe was filed about March 30, 1953.
The total amount of levies with interest paid by plaintiff Jardine was $208.46. The levy made under the ordinance adopted February 26, 1953 and paid by Howe was $24.79. The Law Division found as a fact that all ordinances under which the levies were made were properly and legally adopted.
Although most of the facts were stipulated, the trial court received evidence on the question of laches. The court dismissed both complaints, finding that Jardine was in laches in instituting her action and charged her with knowledge, whether actual or constructive, since 1942, of the fact that the sewer did not run past her property based upon a map filed in 1942 in connection with the creation of the district which allegedly showed that no pipe existed in the street. Plaintiff Howe was found not to be in laches. His action to recover the $24.79 taxes paid and to enjoin future levies was dismissed on the ground that the sewer maintenance tax is and was valid under the 1953 ordinance since it was a valid exercise of authority conferred upon defendant by statute.
The appeal was originally taken by both plaintiffs. Plaintiff Jardine has abandoned her appeal. The appeal is prosecuted with respect to the dismissal of Howe's complaint.
It is stipulated that no benefit was found permitting an assessment under R.S. 40:63-38 which reads:
"The cost of the creation and establishment of such sewerage district or districts and the construction of such sewerage systems, shall be assessed against the lands and real estate benefited thereby, in proportion to and not in excess of the benefits conferred, as a local improvement in the manner provided in article 2 of chapter 56 (§ 40:56-21 et seq.) of this title, * * *."
*514 The defendant borough contends, however, that benefit conferred is not a requirement under R.S. 40:63-39 which states:
"The expense of the operation and maintenance of such sewerage systems, disposal works and pumping stations, shall be met by a levy against all the lands and real estate within the sewerage district or districts."
Furthermore, it argues that the Legislature has imposed upon it  the defendant  a duty to make these assessments and that it has no right to omit them. In the exercise of the legislative mandate it levied the assessments against plaintiff's lands.
There is a rebuttable presumption that assessments for local improvements are properly assessed and confirmed. Appeal of Public Service Electric and Gas Co., 18 N.J. Super. 357, 365 (App. Div. 1952). But at page 362 this court said:
"Local assessments or special taxes for the payment of the cost of certain kinds of public improvements commonly prevail and are generally sustained under the exercise of the power of taxation. But they have no relation to the exercise of the power of eminent domain, and hence constitutional provisions respecting this right have no application. They differ also from general taxes, since they are not a tax at all in the constitutional sense or as taxes are generally understood, although it has been said that `assessments for local improvements form an important part of the system of taxation.' Assessments as distinguished from other kinds of taxation, are those special and local impositions upon the property in the immediate vicinity of municipal improvements, which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived therefrom. 14 McQuillin, Municipal Corporations (3rd ed.), sec. 38.01, pp. 11-15. The foundation of the power to lay a special assessment or a special tax for a local improvement of any character, whether it be opening, improving or paving a street or sidewalk or constructing a sewer, or cleaning or sprinkling a street, is the benefit which the object of the assessment or tax confers on the owner of the abutting property, or the owners of property in the assessment or special taxation district, which is different from the general benefit which the owners enjoy in common with the other inhabitants or citizens of the municipal corporation. Accordingly, it is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is especially benefited. That doctrine, as stated, is based for its final reason on enhancement of values. That is to say, the *515 whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. Whether the property has been especially benefited by an improvement is generally regarded a question of fact, depending on the circumstances in each case, for the determination of the proper tribunal. The broad question is whether the general value of the property has been enhanced, not whether its present owner receives advantage. McQuillin, supra."
"Benefit" is the increment of value to the land affected by the improvement and a local improvement assessment is merely a charge against the specific property benefited. But any cost beyond that measure must be imposed upon the public at large.
In State, Agens, Prosecutor, v. Mayor, etc., of City of Newark, 37 N.J.L. 415, 420, 421 (E. & A. 1874), the court said through Chief Justice Beasley:
"The doctrine that it is competent for the legislature to direct the expense of opening, paving, or improving a public street, or at least some part of such expense, to be put as a special burthen on the property in the neighborhood of such improvement, cannot, at this day, be drawn in question. There is nothing in the constitution of this state that requires that all the property in the state, or in any particular subdivision of the state, must be embraced in the operation of every law levying a tax. That the effect of such laws may not extend beyond certain prescribed limits, is perfectly indisputable. It is upon this principle that taxes raised in counties, townships, and cities, are vindicated. But while it is thus clear that the burthen of a particular tax may be placed exclusively on any political district to whose benefit such tax is to enure, it seems to me it is equally clear that, when such burthen is sought to be imposed on particular lands, not in themselves constituting a political subdivision of the state, we at once approach the line which is the boundary between acts of taxation and acts of confiscation. I think it impossible to assert, with the least show of reason, that the legislative right to select the subject of taxation, is not a limited right. For it would seem much more in accordance with correct theory to maintain, that the power of selection of the property to be taxed cannot be contracted to narrower bounds than the political district within which it is to operate, than that such power is entirely illimitable. If such prerogative has no trammel or circumscription, then it follows that the entire burthen of one of these public improvements can be placed, by the force of the legislative will, on the property of a few enumerated citizens, or even on that of a single citizen. In a government in which the legislative power is not omnipotent, and in which it is a fundamental axiom that private property cannot be taken *516 without just compensation, the existence of an unlimited right in the law-making power to concentrate the burthen of a tax upon specified property, does not exist. If a statute should direct a certain street in a city to be paved, and the expense of such paving to be assessed on the houses standing at the four corners of such street, this would not be an act of taxation, and it is presumed that no one would assert it to be such. If this cannot be maintained, then it follows that it is conceded that the legislative power in question is not completely arbitrary. It has its limit; and the only inquiry is, where that limit is to be placed. (Italics ours)
In State, M'Closky, Prosecutor, v. Chamberlin, 37 N.J.L. 388 (Sup. Ct. 1875), under facts almost similar to the present case, the court held that an assessment of a tax for the maintenance of part of a sewerage system could not be sustained because it was not graded according to the benefit conferred and it could not be sustained as a proper exercise of the taxing power where the sewerage system district was not coextensive with the political or municipal district, since such a tax must fall on all within the entire political district. At page 390 the court said:
"As a special tax or assessment which embraces the property benefited, this cannot be sustained. It is arbitrarily fixed by the legislature, and is not graduated or limited by the benefit received. Nor can it be maintained, as the ordinary or general tax which is imposed on all persons or property, for which the tax payer is supposed to receive in compensation the protection which government affords to his life, liberty and property, and incidentally an increase in the value of his possessions.
The proposition that the power of the legislature over the subject of taxation is unlimited, must be undertood with some qualifications. This essential attribute of government, when abused, becomes usurpation, so that any unlawful assumption of power under it may be successfully resisted. Of necessity, the discretion in the choice of ways and means for supplying the public treasury must be very wide, and it will be much easier to state instances in which the attempt to exercise it would be an encroachment, than to define with precision the scope and extent of the power itself. The legislature may establish, at discretion, special taxing districts, but within the territory so selected, a just standard of taxation must be adopted."
And at page 391:
"The district over which the law now under examination is to operate, is not co-extensive with the political or municipal division *517 of the state, of which it is a part. The proposed scheme is primarily for the public welfare, and incidentally for the benefit of the land owner. Its cost, to the extent of the special value imparted to the lands within this district might, under proper provision for the purpose, be assessed upon it; whatever is in excess of that must, in the exercise of the general taxing power, be thrown upon the entire political district. This is a most salutary rule, free from any difficulty in its application, and is essential to secure to private property immunity against oppression."
In State, Baldwin, Prosecutor, v. Fuller, 39 N.J.L. 576 (Sup. Ct. 1877), affirmed on opinion below 40 N.J.L. 615 (E. & A. 1878), the court had before it a statute which permitted a municipality to create and establish lamp light district or districts within the municipality upon the petition of the owner or owners of more than half the lands lying upon any public road or roads for the lighting of any such road or roads; to authorize the yearly expense of maintaining the posts and lamps, to be assessed one-half upon all taxable property within the lamp district and one-half upon the land or lands on each side of the road or parts thereof lighted in proportion to lineal feet.
The contentions were that the power of taxing and the power of apportioning taxation are identical and inseparable; that without the latter the former cannot be beneficially exercised; that there is no constitutional restraint upon legislative action in either respect and that therefore the power of assigning to each individual citizen his share of the public burden is practically unlimited. The court pointed out that such contentions are too broad and that any argument based upon it must be unsound. The court stated (p. 577):
"The difficulty lies, not in the taxation, but in the apportionment of it; in the attempt to establish in the state a power of selection co-equal with and as unlimited as the right to levy contributions, to enable it to dispense its needful powers."
The court continued (p. 578):
"But it seems equally clear that a tax for state purposes must fall upon the state at large; for county purposes, upon the county; and for the public uses of any lesser political district, upon such *518 district. The county of Hudson could not be required to defray the entire expense of the state government, nor could one township, in that county, be compelled to yield the whole revenue necessary for county purposes; nor could the legislature impose upon a single citizen the whole burden of taxation in the township in which he may reside. * * * laws of the character specified would, to the extent that one man's property is appropriated by them, in excess of his just contribution, to relieve others of a public burden properly resting upon them, take private property for public use, without just compensation. It would be confiscation, not taxation. As we approach the extreme limit of the power of apportionment, the violation of principle will be less striking, but it will still be so apparent that it cannot escape judicial observation. No one will question the right of the city of Trenton, under legislative authority, to grade, pave, and sewer its streets, and include the expense in the general tax levy, while an attempt to impose the cost of such work, in excess of any special benefits actually conferred, upon a taxing district less than the political district of which it is a part, would be instantly arrested by an appeal to the appropriate judicial tribunal. The reason upon which this well-settled doctrine, in this state, is rested is, that it would be a violation of our constitutional provision `that private property shall not be taken for public use without just compensation.' In other states, arbitrary exactions of this character have been sanctioned, on the ground that the principle upon which taxation is founded is, that the tax-payer is supposed to receive just compensation in the benefits conferred by the government under which he lives, and that the law-maker is the sole judge as to whether the benefits received are commensurate with the burdens imposd. * * * This is an assertion of power little, if any, less than despotism wields over the property of its subjects in like cases."
Finally, at p. 585:
"It is suggested that this tax may be regarded as a legitimate exercise of the police power, but this does not remove the radical objection to it. The vice, inherent in the character of the proceeding, is, that in effect it takes private property for public uses without compensation, and it cannot be purged of this infirmity by shifting the ground upon which it is exacted. It is difficult to define the precise extent of police powers. In theory, their primary object is regulation, the raising of revenue being merely incidental. In some adjudications, so wide a range has been given to this power, that under it assessments for sewers have been wholly imposed upon adjacent lands, without regard to accruing benefits. In this state these powers have been hitherto held within much narrower limits; and if it could be successfully invoked to support sewer assessments, and impositions like the one in controversy, it would practically overthrow a rule which is now the accepted law of the state."
*519 In the very nature of today's society, government more and more affects man's rights and property. We have quoted at great length from ancient and well-recognized authorities in order to reaffirm constitutional and judicial limitations upon a possible excessive exercise of a claimed legislative power. Although powers granted to a municipality are to be liberally construed (Article IV, Section VII, paragraph 11, of the Constitution of 1947) such construction in this case is limited by Article I, paragraph 20 that "Private property shall not be taken for public use without just compensation."
We conclude that, while the burden of a particular tax may be placed upon any political district to whose benefit such tax is to enure, the Legislature has no power thus to impose it upon any geographic unit or district smaller in boundary that the political district of which it is a part without having due regard to the special benefit to the lands upon which it is made to fall.
In the construction of statutes the courts assume that the Legislature acted with the existing constitutional law in mind. Thus, in enacting R.S. 40:63-38 and 39 the Legislature had in mind the interdiction of well-established law. In Sperry and Hutchinson Company v. Margetts, 15 N.J. 203, 209 (1954), the Supreme Court declared that:
"The intention of the lawgiver is taken or presumed according to what is consonant to reason and good discretion. The particular words are to be made responsive to the reason and spirit of the enactment. Wright v. Vogt, 7 N.J. 1 (1951). The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature. Nagy v. Ford Motor Co., 6 N.J. 341 (1951)."
We believe that R.S. 40:63-39 must be read in conjunction with R.S. 40:63-38. They are in pari materia. In Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287, 298 (1949), Mr. Justice Heher for the court stated:
"A statute is to be construed as a whole with reference to the system of which it is a part. Apparently conflicting provisions are to be reconciled in accord with the general intent. The true meaning *520 of any clause or provision ordinarily is that which best comports with the subject and general object of the act. Lewis' Sutherland Statutory Construction (2d Ed.) sec. 348."
We hold that the requirement of benefit conferred must have been intended by the Legislature in R.S. 40:63-39 as well as in R.S. 40:63-38.
We agree with the trial court that appellant Howe was not guilty of laches. A reading of the stipulated facts would lead to no other conclusion.
Judgment is reversed to the end that sewer taxes paid by appellant Howe be returned to him and an injunction issue against levying any assessment not consistent with this opinion.