## CITY OF BRIDGEPORT *v.* UNITED ILLUMINATING COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 3—decided November 30, 1944.

*John V. Donnelly,* with whom, on the brief, was *Harry Schwartz,* for the appellant (plaintiff).

*Lorin W. Willis,* for the appellee (defendant).

ELLS, J.   The city of Bridgeport laid an assessment on property of the defendant for repairs made on a

contiguous public sidewalk, filed a lien and brought this action to foreclose it. The trial court decided that the walk was on an approach to a bridge constructed and maintained by the city, and that it was the duty of the city and not the defendant to keep the walk in repair. The plaintiff has appealed.

These facts are not in dispute: The defendant's land is located on the west bank of the Pequonnock River, a navigable stream, and on the northerly side of Congress Street where it leads up to the bridge over the river. The street frontage of the land is 320.32 feet. In 1868, Congress Street was duly laid out from Housatonic Avenue easterly as a public highway fifty feet in width and was substantially on a level with the westerly portion of the property now owned by the defendant, but, at the easterly end of the property, gradually rose above its level until, at the point where the street met the iron structure which then bridged the river, it was approximately seven and one-half feet above the ground level of the property. In order to make the bridge accessible to the traveling public, an approach was constructed on steel girders to form a firm foundation for the roadway and sidewalk leading to the bridge proper. The north sidewalk upon this approach was about four and one-half feet south of the defendant's south line. The defendant's building had several windows and at least two doorways which opened upon an areaway between it and the bridge approach.

In 1901, in anticipation of its construction of a new bridge over the Pequonnock River at this point, the city instituted proceedings under its charter to adopt a new layout of Congress Street as a public highway from Housatonic Avenue easterly over the Pequonnock River, and Congress Street as so laid out was widened from fifty feet to seventy-five feet. It

has continued to exist to the present time under this layout. The northerly line of the new layout continued to be the southerly line of the defendant's land, and the land necessary to widen the street was taken from the property owners along the south side of the street. In the construction of the new roadway as an approach to the new bridge structure, the steel girders were discarded and the new highway above the level of the surrounding properties was constructed over an earth-fill base between concrete retaining walls running to the river from a point a short distance east of the westerly boundary of the defendant's land. Following this layout a new concrete bridge was built over the river, the westerly terminus of the structure resting upon a pier located at the west bank of the river. The westerly terminus of the bridge proper was two feet above the level of the old bridge, and in consequence the new roadway at the easterly boundary of the defendant's land was nine and one-half feet above the level of the defendant's property. The city carried the new approach to the south property line of the defendant, eliminating the areaway which had existed and obliterating the defendant's windows in the south wall of its building. There were two doors in this wall by which entrance was gained into the building from the public sidewalk along the northerly line of Congress Street. Upon this new approach, abutting the south wall of the building, the city constructed a sidewalk for the use of the traveling public. The board of appraisal of benefits and damages found that the defendant sustained, by reason of the new layout, an equal amount of benefits and damages.

In 1936 the common council directed that notice be given owners of property along Congress Street to make needed repairs to the sidewalk adjoining their

properties, and, the defendant having failed to comply, the city did the work and is now seeking to collect from the defendant for the repairs made in the sidewalk hereinbefore described.

The trial court decided the case upon the basis of a finding that the public highway upon which the sidewalk was built is an approach to a bridge. The gist of its conclusion is that therefore it is not a public sidewalk upon a public street but a public sidewalk upon an approach to one of the city's bridges, and that just as the city must maintain the walk on the bridge structure proper so it must maintain it on such streets as serve as an approach to the bridge structure. That the highway at this point is an approach to a bridge is not the vital consideration. It is still a public highway. *Norwalk* v. *Podmore,* 86 Conn. 658, 664, 86 Atl. 582; *City of Stamford* v. *Town of Stamford,* 100 Conn. 434, 438, 124 Atl. 26. The real question is whether the sidewalk here involved is a sidewalk upon a "street or highway" as those words are used in the city charter; it is a question of statutory construction and therefore a question of law.

Section 375 of the city ordinances provides that adjoining landowners shall keep sidewalks in a safe condition for the use of the public and shall repair all defects endangering public travel. This ordinance must be referred back to § 70 of the charter (15 Spec. Laws 523 [1907]), the relevant portion of which authorizes the city to require abutting owners to build and pave sidewalks "in and upon the streets and highways" of the city. The necessary approach is through a consideration of the basis upon which the legislature gave to the city the power to compel abutting owners to repair sidewalks in front of their property.

Such a requirement is generally upheld as made in the exercise of the police power. *Meriden* v. *West*

*Meriden Cemetery Assn.,* 83 Conn. 204, 206, 76 Atl. 515; *Lowell* v. *Hadley,* 8 Metc. (49 Mass.) 180, 191; note, 58 A.L.R. 215. This ground is fully developed in *State* v. *McMahon,* 76 Conn. 97, 55 Atl. 591, in which a city ordinance requiring, under a penalty, abutting owners to remove snow from sidewalks and cover ice on them with sand or other suitable material was upheld. It is there pointed out that in imposing such a duty the state is requiring of its citizens within the class of abutting owners the performance of a duty which serves the general interest of the community; and so long as the requirement is reasonable and fair the law is constitutional. The opinion (p. 106) speaks of the special interest the abutter has in keeping clean and safe the sidewalk in front of his property. See also *Shaw, C.J.,* in *Goddard's Case,* 16 Pick. (33 Mass.) 504, 510. Other cases dealing with a requirement that the owner build or repair sidewalks also speak of this as an element in the situation. See, e.g., *State* v. *Mayor,* 37 N.J.L. 415, 423; *Mayor* v. *Maberry,* 6 Humph. (25 Tenn.) 368, 373.

The essential basis of the rule is that the legislature has the power to place the burden of the upkeep of sidewalks which would otherwise rest upon the community upon the abutting owner, provided it does not act arbitrarily or unreasonably. *Washington* v. *Mayor,* 1 Swan (31 Tenn.) 177, 182. "The establishment, maintenance and regulation of highways is within those powers of the State which are commonly designated as police powers. . . . In the exercise of this power of highway regulation the State may of itself and directly, or through its authorized municipal or other agencies, decide what repair or improvement public comfort or safety requires, and determine upon whom the burden thereof should reasonably fall. . . . The regulations must be reasonable and the bur-

dens must be reasonably cast." *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 451, 53 Atl. 960; *De Capua* v. *New Haven,* 126 Conn. 558, 560, 13 Atl. (2d) 581.

The defendant city acted in accordance with its charter in laying out Congress Street as a public street. The defendant recognizes the fact that it was so laid out but refuses to accept the legal consequences of this action, on the ground that the highway where the defendant's property abutted it was an approach to the bridge. Its principal grievance appears to arise from the fact that the highway is slightly above the level of its property. Had it been constructed on the level of the defendant's land it could hardly be contended that it ceased to be a public street in all respects merely by reason of the fact that it served not only as a means of reaching other streets of the city but also as an approach to one of the city's bridges. The fact that Congress Street gradually rises along the three hundred and twenty foot frontage of the defendant's land to a height of about nine and one-half feet at the easterly end thereof does not alter the nature of the street or the nature of the defendant's obligations with reference thereto. Obviously the property is less benefited by the street at its present grade than it would be if the street were constructed on the level of the defendant's property. It is to be assumed that this fact was considered in the determination which was made of the benefits and damages resulting from the layout mentioned in the statement of facts made earlier in this opinion.

We decide that Congress Street adjacent to the defendant's property does not lose its characteristics as a public street because it also serves as an approach to the bridge; that the defendant has all the duties incident to the ownership of property abutting on a

public street; that among these duties is the obligation of repairing the sidewalk which is a part of the street; that the assessment and the lien therefor were properly levied against the defendant; and that judgment foreclosing the lien should have been rendered in favor of the plaintiff.

There is error, the judgment is set aside and the case is remanded to the City Court of Bridgeport with direction to enter judgment for the plaintiff foreclosing the lien.

In this opinion MALTBIE, C.J., BROWN AND JENNINGS, Js., concurred.

DICKENSON, J. (dissenting). As the majority opinion points out, the imposition upon an abutting owner of the duty to repair and care for the public right of way over his land by a municipality must be reasonable. *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 451, 53 Atl. 960. To require an abutting owner to keep in repair a part of the highway which the trial court, on ample evidence, has found to be a part of a bridge constructed by the municipality seems obviously unreasonable and not within the charter powers granted the plaintiff.