JOHN J. BRANNIGAN v. ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 4—decided March 17, 1953

*James F. Rosen,* with whom, on the brief, was *Peter Marcuse,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the appellees (defendants).

BALDWIN, J.  The plaintiff has appealed from a judgment of the Superior Court sustaining the appeal of the administrator and vacating an award of unemployment compensation to the plaintiff.  The question presented is whether the plaintiff is entitled to unemployment compensation when, upon his voluntary retirement from his employment, he received from his employer a sum of money equal in amount to eighteen months' wages at his regular rate of pay.

The plaintiff was employed for thirty-two years by D. A. Schulte, Inc., hereinafter called the company, as clerk and manager in one of its stores in Bridgeport.  He voluntarily retired on June 2, 1951, at the age of sixty-seven.  Since then, he has been totally unemployed.  He applied for unemployment

compensation and registered for work with the state employment service on June 10, 1951, but it has not referred him to any employment. He is currently receiving social security benefits in the amount of $68.50 each month. Prior to January 1, 1948, the company had no retirement plan. The plaintiff's union, in co-operation with other unions of the company's employees, urged the company to adopt one. The company found, upon investigation, that a plan whereby qualified retired employees received a retirement allowance until death would cost more than the company could afford. Consequently, on January 1, 1948, the company and the unions acting in behalf of the employees entered into an agreement which provides that any employee who reaches the age of sixty-five and who has been in the company's employ for five years or more "shall be entitled to severance pay by reason of age and length of service." The plan was financed entirely by the company. Under its terms the plaintiff was entitled to receive upon retirement, and did receive, $5055.80, which represented eighteen months' pay, less federal income tax and social security deductions.

General Statutes, § 7508, provides that "[a]n individual shall be ineligible for benefits ... (4) during any week with respect to which the individual has received or is about to receive remuneration in the form of (a) wages in lieu of notice or dismissal payments or any payment by way of compensation for loss of wages, or any other state or federal unemployment benefits. . . ." We do not consider the question whether the payment made to the plaintiff was within that part of the clause of the statute which disqualifies a claimant if he receives "wages in lieu of notice or dismissal payments." The plaintiff stopped working voluntarily and made applica-

tion for the severance pay available to him under the agreement. It suffices to say that notice or dismissal payments are usually associated with a termination of the employment relationship for reasons primarily beyond the control of the employee. See note, 147 A.L.R. 151. We rest our decision of the case upon the answer to the question whether the money paid to the plaintiff was a "payment by way of compensation for loss of wages."

Almost the identical issue was before us in *Kneeland* v. *Administrator,* 138 Conn. 630, 88 A.2d 376. The plaintiff in that case had been retired and was receiving payments pursuant to a pension plan provided by the employer. He also was entitled to old-age benefits under the Social Security Act. Although he had registered for work with the state employment service, he had not been referred to any job. We held (p. 636) that he was disqualified for unemployment compensation. The facts in the *Kneeland* case differ from those in the instant case only in that in the *Kneeland* case the pension payments were to be made periodically over an extended period and would terminate upon the death of the pensioner, while in this case the payment was made in a single lump sum. In each, payment was made by the plaintiff's last employer, in consideration of services rendered in the past and not for services to be rendered currently or in the future. In each, the payment was a substitute for the wages the employee once was receiving but no longer did because he was not working for his former employer. It is not a question of how the payments are made but why they are made. Wages are defined in the Unemployment Compensation Act as "all remuneration for employment." Cum. Sup. 1951, § 1324b. When employment ceases, so do

wages. The plaintiff, having retired, was not required to perform any additional services in order to be entitled, under the agreement, to a sum equivalent to eighteen months' pay.

The plaintiff argues that if he is disqualified because he has been given the equivalent of eighteen months' pay, he can never qualify for unemployment compensation. That is true in so far as any claim may be predicated upon his separation from what is presently his last employment, that with D. A. Schulte, Inc. However, as we pointed out in the *Kneeland* case (p. 635), if he enters the employ of another and establishes a new benefit rate, his discharge and consequent claim for unemployment compensation would present another and an entirely different question. The plaintiff also argues that, since the commissioner found as a matter of fact that the payment made to him was not a pension and was not made "by way of compensation for loss of wages," the finding cannot be disturbed unless the commissioner acted arbitrarily, unreasonably or illegally. That is not so. A finding that the payment was not a pension is not decisive. In the case of *Barclay* v. *Administrator,* which immediately precedes this one, we held that a "pension disqualifies any recipient whose claim for benefits under the act is based upon his lack of employment with the payer of the pension." Even though payments made after the severance of employment are held not to be pensions, it does not necessarily follow that the applicant can qualify under the act. The real issue is whether the payment comes within the clause of the statute as one made "by way of compensation for loss of wages." The question determinative of that issue is whether the contract is to be interpreted as expressing the intention of the parties that the lump sum

payment was to be compensation for the loss of the plaintiff's wages with respect to the eighteen months next after his retirement. Consequently, the decision of the case turns on questions of the construction of a statute and the interpretation of a contract, both of which are questions of law. *Bridgeport* v. *United Illuminating Co.,* 131 Conn. 368, 371, 40 A.2d 272. It was the apparent intent of the legislature, as expressed by the clause of the act under consideration, to prevent, within reasonable limits, the duplication of payments to employees separated from their employment.

The sum paid to the plaintiff was not wages but a "payment by way of compensation for loss of wages," that is, for the loss of the wages he would have received if his employment had continued.

There is no error.

In this opinion the other judges concurred.