410 P.2d 93

Isaac P. MOTON and Geraldine Moton, his wife, Appellants,

v.

The CITY OF PHOENIX, a municipal corporation, Appellee.

No. 8533.

Supreme Court of Arizona.

In Division.

Jan. 20, 1966.

24

Merle L. Hanson, Phoenix City Atty., by Patrick E. Burke, Asst. City Atty., for appellee.

Stanley Z. Goodfarb, Phoenix, for appellants.

McFARLAND, Justice.

Isaac P. Moton and Geraldine Moton, appellants, hereinafter designated plaintiffs, filed a complaint in inverse eminent domain in Superior Court, Maricopa County, on May 11, 1964, against the City of Phoenix, a municipal corporation, hereinafter designated the city, seeking compensation for the destruction of certain improvements on property. Plaintiffs appeal from the granting of a motion for summary judgment in favor of the city.

Plaintiffs are the owners of lot 16, block 1, Collins Addition, Phoenix, on which was located prior to 1961 improvements consisting of rental units. On the 8th of August 1960, plaintiffs were served with Phoenix Housing Code Reports, advising them of certain housing violations—in violation of Ordinance No. G–293 of the City of Phoenix, commonly designated as the Phoenix Housing Code. On August 11, 1960, plaintiffs were served with a "Notice of Condemnation" letter which stated that plaintiffs' property was declared unfit for human habitation "by reason of damage, decay, dilapidation, unsanitary, unsafe, and vermin-infested," and ordered the same to be vacated within thirty days of the notice. It also gave notice that failure to start restoration or demolition of the dwelling or dwelling units within thirty days of the vacation of the premises would make it necessary for the Urban Renewal Director to order the same repaired or demolished, and that all expenses in this connection would be declared a tax lien upon the premises, and collected in the same manner as other taxes.

This notice was given under Section 11 of Ordinance No. G–293, which provided a procedure under which the Urban Renewal Director might determine that any dwelling or dwelling unit was unfit for human habitation, and for the notice of repair or demolition of the same; also for the right to petition for hearing before the Board of Housing Appeals within twenty days after notice; and further provided that any person or persons aggrieved by a decision of the Board might within thirty days after the filing of the Board's decision in the office of the Board of Housing Appeals petition the court for a writ of certiorari to review the decision.

The city followed the procedure as set forth in the ordinance. The notice was given by the Urban Renewal Director; and the plaintiffs complied with the notice, and demolished the buildings on the property. No request for hearing was made before the Board of Housing Appeals, and no petition to the court was filed for a writ of certiorari. Plaintiffs allege in their complaint that the order which required destruction or demolition of the structures on their property constituted the taking of the

same by the city pursuant to Art. II, Sec. 17 of the Arizona Constitution, 1 A.R.S.[1], and that the city was liable in inverse eminent domain for the payment to plaintiffs of just compensation. The question presented in this case is whether the proceedings of the city constituted a taking of plaintiffs' property in inverse eminent domain. It is the contention of the city that the action taken in the giving of the notice was an exercise of police power. The distinction between the taking of property under eminent domain and a regulation under police power is set forth in Nichols on Eminent Domain, as follows:

"For the sake of accurate thinking it is well to keep in mind the fundamental distinction between the two powers in their application to private property. In the exercise of eminent domain property or an easement therein is taken from the owner and applied to public use because the use or enjoyment of such property or easement therein is beneficial to the public. In the exercise of the police power the owner is denied the unrestricted use or enjoyment of his property, or his property is taken from him because his use or enjoyment of such property is injurious to the public welfare. Under the police power the property is not, as a general rule, appropriated to another use, but is destroyed or its value impaired, while under the power of eminent domain it is transferred to the state to be enjoyed and used by it as its own." 1 Nichols, Eminent Domain, p. 95, § 1.42[2] (3rd ed. 1950)

■ We have held that a municipality has the right to define nuisances and abate them. Hughes v. City of Phoenix, 64 Ariz. 331, 170 P.2d 297; Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527. Other courts have held that the requirement by a city that buildings meet a prescribed standard is a valid exercise of police power. City of Louisville v. Thompson, Ky., 339 S.W.2d 869; Annot. 14 A.L.R.2d 73. In Boden v. City of Milwaukee, 8 Wis.2d 318, 99 N.W. 2d 156, the Wisconsin Supreme Court, in upholding an ordinance as a valid exercise of police power, stated:

"It is well recognized that it is a legitimate exercise of the police power to require existing buildings used for human habitation to meet reasonable prescribed standards in order to protect the health and safety of the occupants. Brennan v. City of Milwaukee, 1953, 265 Wis. 52, 60 N.W.2d 704, and Adamec v. Post, 1937, 273 N.Y. 250, 7 N.E.2d 120, 109 A.L.R. 1110.

\* \* \* \* \* \*

"If a particular building is in such a condition as to threaten the safety or

---

1. " \* \* \* No private property shall be taken or damaged for public or private use without just compensation having first been made, or paid into court for the owner, \* \* \*." Ariz.Const., Art. II, § 17.

health of the occupants, and those of the general public who may enter it as licensees of such occupants, the police power of the city is broad enough in scope to authorize the condemnation of the building, if necessary to effectively protect such occupants and licensees.

\* \* \* \* \* \*

"The practical effect of that part of the ordinance, which authorizes the commissioner of health to condemn a building as unfit for human habitation, is to declare such building to be a public nuisance. Municipal corporations have a wide discretion in declaring certain conditions to constitute a public nuisance. Sullivan v. City of Los Angeles, 1943, 116 Cal.App.2d 807, 254 P.2d 590; Rowe v. City of Pocatello, 1950, 70 Idaho 343, 218 P.2d 695; 6 McQuillin, Mun.Corp. (3rd ed.) p. 578, sec. 24.63; 1 Antieau, Mun.Corp. Law, p. 296, sec. 6.01. \* \* \*

\* \* \* \* \* \*

"The plaintiffs do not complain of any procedural lack of due process in the application of the ordinance to their property. It would be most difficult to substantiate such a contention in view of the adequate time extended to the plaintiffs to remedy their violations, and the opportunity to have had a hearing before the commissioner on the merits if they had elected to do so." 99 N.W.2d at 160

62 C.J.S. Municipal Corporations § 177 states:

"*Compensation.* In the absence of statutory provision for compensation, private property may be destroyed by a municipal corporation without compensation to the owner where the destruction is necessary to protect the public and the municipality is properly exercising the police power. \* \* \* \* " 62 C.J.S. at 333

The procedure discussed in Boden v. City of Milwaukee, supra, was very similar to that of the instant case. There was a finding by the Urban Renewal Director in the instant case that the property was unfit for human habitation by reason of damage, decay, dilapidation, lack of sanitation, unsafe, and vermin-infested. Plaintiffs destroyed the buildings on the property in compliance with the notice. They do not contend that the destruction of the property was not under the procedure, and in compliance with Ordinance No. G–293. There was no public use derived from the destruction of the buildings on the property. The question of the existence of a nuisance is open to review by the courts. Yen Eng v. Board of Bldg. & Safety Com'rs of Los Angeles, 184 Cal. App.2d 514, 7 Cal.Rptr. 564. Any action against the city for improperly declaring a nuisance would be one in tort. The statute of limitations regarding torts is two years. A.R.S. § 12–542; Daniel v. City

of Tucson, 52 Ariz. 142, 79 P.2d 516, 117 A.L.R. 1211. Plaintiffs elected to sue in inverse eminent domain, which was not supported by the pleadings and the records in the case. The court properly granted the summary judgment.

Judgment affirmed.

BERNSTEIN, V. C. J., and UDALL, J., concurring.