270 P.3d 902

**BONITO PARTNERS, LLC, an Arizona limited liability company, Plaintiff/Appellant,**

v.

**CITY OF FLAGSTAFF, a municipality, Defendant/Appellee.**

**No. 1 CA–CV 10–0819.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 21, 2012.

one declarant and was the only evidence that its recipient possessed or sold methamphetamine.

Gerald W. Nabours, Flagstaff, Attorney for Appellant.

Mangum, Wall, Stoops & Warden, P.L.L.C. By Kenneth H. Brendel, Clyde P. Halstead, Flagstaff, Attorneys for Appellee.

David R. Merkel, Joni L. Hoffman, Phoenix, Attorneys for Amicus Curiae League of Arizona Cities and Towns.

## OPINION

HALL, Judge.

¶ 1 Bonito Partners, LLC (Bonito) appeals from the trial court's summary judgment in favor of the City of Flagstaff (the City). Bonito contends that the City's ordinance requiring that owners of property adjoining sidewalks keep them in repair and imposing a lien against the property for the costs of repair if performed by the City is unconstitutional because, among other reasons, it "takes" private property for public use without just compensation in violation of the Fifth Amendment. Finding that the ordinance is a valid exercise of the City's police powers, the trial court rejected Bonito's Tak-

ings Clause claim. Even though we agree that the ordinance constitutes a lawful exercise of the City's police powers, such a determination does not resolve the Takings Clause challenge, which is an analytically distinct issue. Therefore, we affirm in part and vacate and remand in part.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The facts relevant to the issues on appeal are undisputed. Bonito owns a parcel of land in Flagstaff that is adjacent to a City sidewalk. At some point, through no fault of Bonito, the sidewalk fell into disrepair. In a letter dated May 18, 2009, the City notified Bonito that, pursuant to City ordinance Section 8-01-001-0003, Bonito was responsible for repairing the sidewalk within ten days. The letter further explained that the City would repair the sidewalk and bill Bonito for the work if Bonito failed to complete the repairs within the designated time period. If Bonito then failed to timely pay the City for the repair work, the City would place a lien on Bonito's property.

¶ 3 On June 25, 2009, Bonito received a second notice from the City stating that Bonito was responsible for the cost of repairing the sidewalk. On June 29, 2009, Bonito responded to the City's second notice, stating: "Please proceed with the repairs. Do not wait for Bonito Partners, LLC to do the work."

¶ 4 The City performed the work to repair the sidewalk. On July 23, 2009, the City sent Bonito a letter explaining that it had performed the repairs and included an itemized statement of the repair costs. Bonito failed to pay the City for the repairs and the City recorded a lien on Bonito's property.

¶ 5 On March 23, 2010, Bonito filed a complaint in the trial court, arguing that the City's ordinance requiring private property owners to repair public sidewalks violates the federal and state constitutional prohibitions against the taking of private property for public use without just compensation. In a subsequent amended complaint, Bonito also alleged that the ordinance constitutes an unlawful tax and exceeds the authority permitted by Arizona statute and the City's charter.

¶ 6 Bonito and the City filed cross-motions for summary judgment. After holding oral argument on the motions, the trial court granted summary judgment in favor of the City.

¶ 7 Bonito timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(B) (2003).

## DISCUSSION

¶ 8 Summary judgment shall be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We review de novo the trial court's application of the law. *State Comp. Fund v. Yellow Cab Co.*, 197 Ariz. 120, 122, ¶ 5, 3 P.3d 1040, 1042 (App.1999).

¶ 9 On appeal, Bonito contends that the trial court erred by granting summary judgment in favor of the City. Specifically, Bonito argues that the City's ordinance requiring property owners to pay for repairs to public sidewalks (1) violates the federal and state constitutional takings clauses, (2) constitutes an unlawful tax, and (3) exceeds the authority extended to the City by statute and by its charter. We address each of these arguments in turn.

### I. Unconstitutional Taking

¶ 10 Bonito asserts that the City's ordinance requiring private property owners to repair public sidewalks violates the Takings Clause of the Fifth Amendment to the United States Constitution: "[N]or shall private property be taken for public use, without just compensation."[1] In the trial court and on

1. Article 2, Section 17, of the Arizona Constitution, Arizona's analogue to the Takings Clause, provides in relevant part: "No private property shall be taken or damaged for public or private use without just compensation having first been made[.]" Although Arizona's constitutional provision is not necessarily coextensive with its federal counterpart, *see Bailey v. Myers*, 206 Ariz. 224, 229, ¶ 20, 76 P.3d 898, 903 (App.2003), Bonito does not contend that the state constitution affords him greater protection or applies differently under the circumstances of this case. Therefore, we analyze the issues presented here under the Fifth Amendment.

appeal, both parties frame their arguments in terms of whether the City's ordinance requiring property owners to repair defective sidewalks is a valid exercise of the City's police powers.[2] In its minute entry ruling dismissing the complaint, the trial court agreed with the City's argument that the ordinance was a valid exercise of that power and therefore was not an unconstitutional taking. As we discuss below, the parties' arguments, and the court's ruling, conflate the analytically separate—albeit interrelated-issues regarding whether the ordinance is valid under the Due Process Clause of the Fourteenth Amendment and, if so, whether it nonetheless violates the Takings Clause.

¶ 11 As clarified by the United States Supreme Court in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), a Takings Clause analysis presupposes a valid exercise of police power. *Id.* at 543, 125 S.Ct. 2074 ("[T]he Takings Clause presupposes that the government has acted in pursuit of a valid public purpose.").[3] Thus, the question whether the City's ordinance is a valid exercise of police power, which is properly analyzed under the Due Process Clause of the Fourteenth Amendment, is preliminary to the Takings Clause claim. *Lingle*, 544 U.S. at 539, 125 S.Ct. 2074; *see also First Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (explaining that the Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking") (emphasis in the original); *see also Ranch 57 v. City of Yuma*, 152 Ariz. 218, 225, 731 P.2d 113, 120 (App.1986) ("Although a zoning ordinance

may be a proper exercise of the police power, it nevertheless may result in an unconstitutional taking of property."). Accordingly, we need not consider whether the ordinance violates the Fifth Amendment unless we first determine that the ordinance is a valid exercise of the City's police powers.

¶ 12 A municipality "has the right to define nuisances." *Moton v. City of Phoenix,* 100 Ariz. 23, 26, 410 P.2d 93, 95 (1966). Using its police powers, "a municipality may abate a nuisance without compensating the owner of the property." *City of Tempe v. Fleming,* 168 Ariz. 454, 458, 815 P.2d 1, 5 (App.1991); *see also Moton,* 100 Ariz. at 27–28, 410 P.2d at 95–96 ("In the absence of a statutory provision for compensation, private property may be destroyed by a municipal corporation without compensation to the owner where the destruction is necessary to protect the public and the municipality is properly exercising the police power.") (quoting 62 C.J.S. Municipal Corporations § 177). When "the reasonableness of [an] ordinance and its relationship to the police power are fairly debatable ... the court will not substitute its opinion for that of the legislative body." · *City of Phoenix v. Fehlner,* 90 Ariz. 13, 20, 363 P.2d 607, 612 (1961) (internal quotation omitted). Indeed, "[a]n ordinance will not be found unconstitutional unless it affirmatively appears that the restriction is clearly arbitrary and unreasonable, and has not any substantial relation to the public health, safety, morals, or general welfare." *City of Phoenix v. Oglesby,* 112 Ariz. 64, 65, 537 P.2d 934, 935 (1975) (internal quotation omitted). The party objecting to an ordinance carries the burden of demonstrating its unconstitutionality. *Fehlner,* 90 Ariz. at 18, 363 P.2d at 611.

---

**2.** The two cases Bonito primarily relies upon, *Rivett v. City of Tacoma,* 123 Wash.2d 573, 870 P.2d 299, 301 (1994), and *Tropiano v. City of Tacoma,* 105 Wash.2d 873, 718 P.2d 801, 802 (1986), are both slip-and-fall cases in which the issue was whether the City of Tacoma could shift liability for damages caused by public sidewalk defects onto the adjacent private property owner. Because neither case addressed the issue raised here, namely, whether a municipality may require a private property owner to pay for repairs to an adjacent sidewalk, they are inapposite.

**3.** The clarification was needed because the Court had previously used a "substantially advances" formula in determining whether a municipal zoning ordinance effected a taking, thereby commingling the due process and takings clauses. *See Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) ("The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests[.]").

¶ 13 The City's ordinance Section 8–01–001–0003 provides:

> It shall be the duty of the owner or owners of [lots adjoining sidewalks in disrepair] within ten (10) days after the service of [notice from the City] to place the sidewalk or portion of sidewalk in such notice mentioned or described in good condition and repair using therefor material similar in character and dimensions of that with which such sidewalk was originally constructed; provided that such sidewalk shall comply with the provisions and specifications for the laying and constructing of sidewalks as are on file in the Engineering Section of the City.

The lien placed by the City was authorized pursuant to Section 8–01–001–0007:

> The cost of such repairs . . ., together with all costs and penalties herein provided for,[4] shall constitute a lien upon the lot or lots fronting or adjoining the said sidewalk so repaired . . . in favor of the City.

■ ¶ 14 Bonito does not dispute that the sidewalk adjacent to its property was in disrepair, posed a potential hazard to pedestrians, and would constitute a nuisance if it were maintained on private property. Nor does Bonito dispute that the City has the authority to require a private property owner to remove a nuisance from private property at the owner's expense. *See Fleming,* 168 Ariz. at 457–58, 815 P.2d at 4–5 (explaining that a municipality may require a property owner to terminate a nuisance on the property, such as trash, debris, or weeds, at the property owner's expense). Instead, Bonito contends that the City is the party responsible for keeping public sidewalks in good repair, not adjacent property owners, and asserts that the ordinance's appropriation of private funds to cure a public nuisance is an invalid exercise of the City's police power. We disagree.

■ ¶ 15 Under the auspices of its police power, the legislature may "place the burden of the upkeep of sidewalks which would otherwise rest upon the community upon the abutting owner, provided it does not act arbitrarily or unreasonably." *City of Bridgeport v. United Illuminating Co.,* 131 Conn. 368, 40 A.2d 272, 273 (1944); *see also City of Philadelphia to the Use of Tony Depaul and Son v. Authority for Indus. Dev.,* 230 Pa.Super. 226, 326 A.2d 502, 504 (Pa.Super.Ct.1974) ("[T]here is ample authority that a city may properly regulate and police the condition of its sidewalks, and require abutting landowners to make repairs when necessary[.]"); *Palmyra v. Morton,* 25 Mo. 593, 596 (1857) ("The right of a municipal corporation to require the owner to pave the sidewalk in front of his property, may be derived from its duty to protect the public health and to prevent nuisances, and is a mere police regulation.").[5] Moreover, an ordinance requiring adjoining landowners to keep sidewalks in a safe condition serves not only the general interest of the community, but the "special interest the abutter has in keeping clean and safe the sidewalk in front of his property[.]" *City of Bridgeport,* 40 A.2d at 273; *see also Ford v. Kansas City,* 181 Mo. 137, 79 S.W. 923, 926 (1904) ("The fundamental ground upon which the ordinance is predicated is that a sidewalk kept in good repair enhances the value of the property upon which it fronts."). We likewise conclude that ordinance Section 8–01–001–0003 is neither arbitrary nor unreasonable and is, therefore, a valid exercise of the City's police power.

---

4. If the property owner does not pay the costs of repair within ten days of its filing with the City Clerk, fifty percent of the amount of the cost is added to the cost and becomes an additional charge upon the property. Section 8–01–001–0008. Although the City has not done so here, and claims that its practice is only to enforce the lien upon a sale of the property, the City is empowered to publish a notice of sale of property for four consecutive issues in a weekly paper "[a]s soon as practicable after the attaching of such penalties" and thereafter sell the property "from the front door of the City Hall." Section 8–01–001–0009.

5. We also note that Arizona Attorney General Opinion 56–43 opines that a municipality has the power to require a "property owner to repair defective sidewalks adjoining his lot." Attorney General Opinions are advisory only, however, and not binding on the court. *Marston's, Inc. v. Roman Catholic Church of Phoenix,* 132 Ariz. 90, 94, 644 P.2d 244, 248 (1982).

¶ 16 We now consider whether the statutory scheme nonetheless violates the Takings Clause. We initially note that if Section 8–01–001–0003 is viewed in isolation, it could be argued that the ordinance does not implicate the Takings Clause. *See Eastern Enterprises v. Apfel*, 524 U.S. 498, 541, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (Kennedy, J.) (concurring in the judgment and dissenting in part) (disagreeing with the Takings Clause rationale relied on by the four-justice lead opinion to enjoin a coal mining regulation: "[O]ne constant limitation has been that in all of the cases where the regulatory analysis has been employed, a specific property right or interest has been at stake."). Even assuming that Section 8–01–001–0003 does not take any property right for which compensation may be required under the Takings Clause, however, Bonito's property is also regulated by the lien imposed pursuant to Section 8–01–001–0007 as part of the overall statutory scheme. *See id.* at 540, 118 S.Ct. 2131. Therefore, even though we have determined that the requirement that a lot owner repair the adjoining sidewalk is a valid exercise of the City's police powers, the question whether the imposition of a lien on Bonito's property effects an unconstitutional taking must be separately addressed.

■■■ ¶ 17 "[P]roperty may be regulated to a certain extent, [but] if a regulation goes too far it will be recognized as a taking." *Ranch 57*, 152 Ariz. at 225, 731 P.2d at 120 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). The Takings Clause requires payment so that government cannot "forc[e] some people alone to bear public burdens, which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 336, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (explaining that "the concepts of 'fairness and justice' [ ] underlie the Takings Clause").

¶ 18 The United States Supreme Court has recognized two categories of "per se" takings for Fifth Amendment purposes: (1) when the "government requires the property owner to suffer a permanent physical invasion of her property," and (2) when government regulations "completely deprive an owner of all economically beneficial use of her property." *Lingle*, 544 U.S. at 538, 125 S.Ct. 2074. Here, Bonito has suffered neither a permanent physical invasion of its property nor a complete deprivation of all economically beneficial use of its property. Therefore, no "per se" taking has occurred.

■■■ ¶ 19 "Outside the[ ] two relatively narrow categories [of per se takings] …, regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)." *Id.* In applying the *Penn Central* factors, the Court has "generally eschewed" any "set formula for determining how far is too far, preferring instead to engage in 'essentially ad hoc, factual inquiries.'" *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (quoting *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646). Such an inquiry requires an examination into all of the relevant circumstances in a particular case, with primary emphasis on: (1) "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations," and (2) "the character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interest through some public program adjusting the benefits and burdens of economic life to promote the common good[.]" *Lingle*, 544 U.S. at 538, 125 S.Ct. 2074 (internal quotation omitted).

■■■ ¶ 20 Neither party has yet addressed the *Penn Central* standard for determining when a governmental regulation affecting property rights requires compensation. Rather, the parties argued—and the trial court seemingly relied on—case law predating *Lingle* that failed to distinguish between due process and takings analysis. *See id.* at 537–39, 125 S.Ct. 2074 (explaining the Supreme Court's own doctrinal confusion in conflating Fourteenth Amendment due process law with Fifth Amendment takings analysis). Because of the essentially ad hoc,

factual nature of the inquiry, an appellate court is ill-equipped to apply the *Penn Central* factors when they have not been addressed and developed by the parties in the trial court. Therefore, we vacate the trial court's ruling on this issue and remand for the court to determine whether the City's lawful exercise of its police powers nonetheless constituted an unconstitutional taking.

## II. Unlawful Taxation

¶ 21 Bonito contends that the City's ordinance is a "special tax" in violation of Article 9, Section 1, of the Arizona Constitution.

¶ 22 In *Smith v. Mahoney*, 22 Ariz. 342, 346–47, 197 P. 704, 706 (1921), the supreme court explained that whether an enactment falls within the scope of the police power or the taxing power "depends upon the purposes of the act."

> The police power must also be distinguished from the taxing power, and the distinction is this: That the taxing power is exercised for the raising of revenue, while the police power is exercised only for the purpose of promoting the public welfare, and though this end may be attained by taxing or licensing occupations, yet the object must always be regulation and not the raising of revenue, and hence the restrictions upon the taxing power do not apply.

*Id.* (internal quotation omitted).

¶ 23 Here, the City's ordinance is not a revenue-generating measure. The purpose of the ordinance is clearly limited to abating public nuisances. Pursuant to the ordinance's express terms, a property owner may independently make the necessary sidewalk repairs without remitting any funds to the City. Alternatively, a property owner may choose to allow the City to make the necessary repairs and then pay the City only the costs incurred to remedy the nuisance. Under either circumstance, the City does not generate any revenue.

## III. Local or Special Law

¶ 24 Bonito argues that the City's sidewalk repair ordinance constitutes a "local or special law" that violates Article 4, Part 2, Section 19, of the Arizona Constitution. Specifically, Bonito asserts that the City's ordinance applies to only "certain members of a class," namely, property owners with an adjoining sidewalk, and it maintains that the ordinance is arbitrary "because it has no relation to the use or benefit of the sidewalk."

¶ 25 A special law "applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose." *State Comp. Fund v. Symington*, 174 Ariz. 188, 192, 848 P.2d 273, 277 (1993) (quotation omitted). A law is general, not special, when: "(1) the classification is rationally related to a legitimate governmental objective, (2) the classification is legitimate, encompassing all members of the relevant class, and (3) the class is elastic, allowing members to move in and out of it." *Long v. Napolitano*, 203 Ariz. 247, 253, ¶ 14, 53 P.3d 172, 178 (App.2002).

¶ 26 In this case, the City's ordinance furthers a legitimate governmental objective of abating public sidewalk nuisances. The proximity limitation placed on the class is rationally related to the purpose in that the owner of private property adjacent to the public sidewalk may be in the best position to monitor the state of the sidewalk and often derives a significant benefit from the sidewalk as a means of ingress and egress to his private property. In addition, the ordinance applies uniformly to *all* property owners with public sidewalks adjacent to their properties. Finally, the class is elastic—when a person acquires property adjacent to a public sidewalk he becomes a member of the class, and when a person relinquishes property adjacent to a public sidewalk he is no longer included in the class. Therefore, the trial court did not err by finding the City's ordinance is not a "local or special law."

## IV. Statutory Authority and Scope of Charter

¶ 27 Bonito asserts that the City's ordinance exceeds the scope of authority granted to the City by statute.

¶ 28 A municipal corporation has "no inherent power." *Bivens v. Grand Rap-*

*ids,* 443 Mich. 391, 505 N.W.2d 239, 241 (1993). Instead, "[a] city can exercise only such powers as are delegated to it by the Constitution and the laws of the state and its charter." *City of Phoenix v. Williams,* 89 Ariz. 299, 303, 361 P.2d 651, 654 (1961) (internal quotation omitted and emphasis removed).

¶ 29 Pursuant to A.R.S. § 9–243 (2008), the "common council" of a city or town "may require the proprietor of any block, lot or part of a lot within the town to construct a sidewalk in front thereof ... and may by ordinance provide that upon failure of the proprietor to construct the sidewalk within a time to be prescribed after notice so to do it may be constructed by the town, and the expense thereof assessed against the block, lot or part thereof." Moreover, as noted by the City, numerous additional statutes supplement the powers granted by A.R.S. § 9–243. *See* A.R.S. § 9–240(B)(3)(a) (granting cities and towns "exclusive control over the streets, alleys, avenues and sidewalks of the town"); A.R.S. § 9–240(B)(21)(a) (granting cities and towns authority to "define, abate and remove nuisances"); A.R.S. § 9–240(B)(21)(b) (granting cities and towns authority to "compel the owner or any occupant of any house or premises to clean the grounds, stables, alleys, streets and walks appurtenant and adjacent thereto"); A.R.S. § 9–276(A)(6) (granting cities and towns authority to "regulate the use of sidewalks ... and require the owner or occupant of premises to keep the sidewalks in front of or along the premises free from obstruction").

¶ 30 The interpretation of a statute is a question of law that we review de novo. *See Rowland v. Kellogg Brown & Root, Inc.,* 210 Ariz. 530, 532, ¶ 5, 115 P.3d 124, 126 (App.2005). "When construing a statute, we examine its individual provisions in the context of the entire statute to achieve a consistent interpretation." *Reeves v. Barlow,* 227 Ariz. 38, 41, ¶ 12, 251 P.3d 417, 420 (App.2011) (internal quotation omitted). "Indeed, if statutes relate to the same subject and are thus *in pari materia,* they should be construed together ... as though they constituted one law." *Id.* (internal quotation omitted and emphasis in original).

¶ 31 Bonito correctly points out that no Arizona statute expressly authorizes a city to compel its private property owners to repair public sidewalks. Considering A.R.S. § 9–243, which permits cities to require private property owners to construct public sidewalks, in conjunction with A.R.S. §§ 9–240 and –276, which grant cities exclusive control over sidewalks, the authority to define and abate nuisances, and compel private property owners to clean sidewalks and keep them free from obstruction, we construe Title 9's grant of general and specific powers to cities to encompass the authority to require private property owners to repair sidewalks adjacent to their property. *Cf. Thomas v. Baker Family Trust,* 191 Ariz. 187, 188, 953 P.2d 931, 932 (App.1997) (explaining that a property owner has no common-law duty to repair a sidewalk adjacent to his property, but noting that "such a duty may be imposed by statute or city ordinance"). Therefore, the City's ordinance does not exceed the scope of authority extended to the City by statute.

¶ 32 Next, Bonito argues that the City's ordinance exceeds the authority extended to the City by its charter.

¶ 33 "[T]he powers derived by a municipality from its charter are three-fold: those granted in express words, those fairly implied in the powers expressly granted, and those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensible." *Williams,* 89 Ariz. at 302, 361 P.2d at 654 (quoting *Schultz v. City of Phoenix,* 18 Ariz. 35, 39, 156 P. 75, 76 (1916)).

¶ 34 Bonito correctly notes that the City's charter does not expressly grant the City the authority to compel a private property owner to repair a public sidewalk. Article 1, Section 3, of the City's charter, however, grants the City "all the powers granted to municipal corporations and to cities by the Constitution and general laws of this State, together with all the implied powers necessary to carry into execution all the powers granted." Moreover, Article 13, Section 8, grants the City Council the "plenary power to enact and make all proper and necessary

ordinances ... to carry out and give effect to the express, as well as the implied, powers granted in this Charter ... and thereby protect and safeguard the rights, interests, safety, morality, health, and welfare of the City and its inhabitants."

¶ 35 As discussed above, we construe Title 9 as extending cities the power to compel private property owners to repair public sidewalks adjacent to their property. Therefore, Article 1, Section 3, which incorporates all of the powers given to the City by statute, authorizes the City's ordinance. In addition, Article 13, Section 8, also gives the City the police power to enact all ordinances necessary to promote the health and safety of its citizens. And, as discussed above, the ordinance at issue falls within this broad police power. *Compare Schadt v. Latchford*, 843 A.2d 689, 694 (Del.2004) (holding that the city's ordinance transferring the obligation to repair and maintain public sidewalks from the city to private property owners constituted a "wide and inconsistent departure" from the city's charter that prohibited the city from delegating the duty to anyone "other than by contract"). Therefore, the City's ordinance does not exceed the scope of the City's charter.

## V. Request for Attorneys' Fees

¶ 36 Bonito has requested an award of its attorneys' fees incurred on appeal pursuant to A.R.S. §§ 12–348(B)(1) (Supp.2011) and 33–420 (2007). Section 12–348(B)(1) permits a court to award attorneys' fees to a party that successfully challenges the assessment or collection of taxes. Because the ordinance at issue is not a revenue-generating measure, this statutory basis for an award of attorneys' fees is inapplicable. Likewise, A.R.S. § 33–420, which states that a party that places a lien against real property "knowing or having reason to know that the [lien] is ... groundless" is liable for the other party's attorneys' fees, is also inapplicable. Therefore, we deny Bonito's request for an award of its attorneys' fees.

## CONCLUSION

¶ 37 The summary judgment is affirmed in part and vacated and remanded in part.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and PATRICIA K. NORRIS, Judge.