IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Marriage of:

GENE R. AMES, *Petitioner/Appellee,*

*v.*

JULIE L. AMES, *Respondent/Appellant.*

No. 1 CA-CV 15-0013 FC
FILED 3-10-2016

---

Appeal from the Superior Court in Maricopa County
No.  FN2003-001250
The Honorable Richard Albrecht, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Scott L. Patterson, PLLC, Tempe
By Scott L. Patterson
*Counsel for Respondent/Appellant*

Owens & Perkins, P.C., Scottsdale
By Max Nicholas Hanson
*Counsel for Petitioner/Appellee*

---

**OPINION**

Chief Judge Michael J. Brown delivered the opinion of the Court, in which Acting Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**B R O W N**, Chief Judge:

**¶1**      This opinion addresses whether the trial court erred in dismissing a petition for enforcement of spousal maintenance based on Arizona Revised Statutes ("A.R.S.") section 25-553, which provides that a party may not seek a judgment on spousal maintenance arrearages more than "three years after the spousal maintenance order terminates."  Because the court properly concluded that the petition was not timely filed, we affirm.

**BACKGROUND**

**¶2**      The marriage of Julie L. Ames ("Wife") and Gene R. Ames ("Husband") terminated in June 2003 upon the entry of a consent judgment and decree of dissolution.  The decree stated that Husband would pay Wife spousal maintenance of $1,000 per month for four years.

**¶3**      In May 2014, Wife filed a petition to enforce the spousal maintenance order, alleging Husband owed her more than $46,000 for missed payments plus interest from July 2003 through April 2014.  In support of her petition, Wife filed an unsigned pleading titled "Affidavit of Direct Payments," together with email correspondence, alleging that Husband made only eighteen of the forty-eight monthly payments and, even then, paid less than the designated amount when he made sixteen out of those eighteen payments.  Wife alleged further that she had repeatedly contacted Husband regarding his failure to make the court-ordered payments, which often resulted in Husband making renewed efforts to meet his obligation.

**¶4**      Husband and Wife represented themselves at a subsequent hearing on the petition.  In response to questioning from the trial court, they agreed that the "total of [the] past due obligation" was $29,673.26.  At that point, however, Husband orally moved to dismiss the petition, contending the action was barred by a three-year statute of limitations (A.R.S. § 25-553)

governing enforcement of spousal maintenance orders. Wife responded that she had "addressed" that issue in her petition, and the trial court took the matter under advisement.

¶5        Several days later, the trial court entered a signed order dismissing the petition to enforce spousal maintenance. The court explained that the spousal maintenance obligation began in July 2003, terminated in July 2007, and that Wife waited more than three years after the order terminated to seek enforcement, in contravention of A.R.S. § 25-553(A).

¶6        Through counsel, Wife filed a motion to amend the order or, alternatively, for a new trial. With greater specificity, Wife argued that she and Husband had "kept in contact over the years regarding the payment of the spousal maintenance award," Husband "made repeated promises to make additional payments in the future," and he had made continuous monthly payments of differing amounts from January 2007 to February 2011. Wife also argued the court violated her right to procedural due process by ruling on the oral motion to dismiss without providing her an opportunity to file a written response. Finally, Wife argued that because the decree did not expressly identify a specific date on which the spousal maintenance order would end, it did not terminate until the obligation was paid in full, and therefore A.R.S. § 25-553 did not bar her claim. The trial court denied Wife's motion to amend/motion for new trial and this timely appeal followed.

## DISCUSSION

### A.        Due Process

¶7        Wife contends the trial court violated her right to due process by dismissing her petition without affording her an opportunity to respond, in writing, to Husband's oral motion to dismiss. The parties dispute whether the court should have treated Husband's motion as one for summary judgment. *See* Ariz. R. Fam. L.P. ("Rule") 32(B) (explaining that, in the event matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss shall be treated as a motion for summary judgment). Regardless of the label, it makes no difference here because (1) in either case our review is de novo; (2) the only evidence in the record was submitted by Wife; (3) for purposes of assessing Husband's motion, such evidence is undisputed; and (4) Wife has not identified any other evidence she would have presented to the trial court in support of her petition.

¶8 Given the unique procedural posture of Husband's motion, the trial court properly could have waited for the applicable response time to run before issuing its ruling on the motion. But we do not agree with Wife's assertion on appeal that she was denied due process.

¶9 Responding to Husband's motion at the hearing, Wife informed the court she had anticipated and already "addressed" Husband's claim that her petition was barred by statute as untimely. Wife identified the relevant section of her affidavit and informed the court she had consulted with an attorney on that issue and had cited a superior court ruling that purportedly held "there's no[] statute of limitations on spousal maintenance enforcement." Given Wife's representations to the court that she had consulted counsel, conducted legal research, and addressed Husband's argument in writing, we cannot say the court abused its discretion by ruling on the motion without waiting for a written response.

### B.     Application of A.R.S. § 25-553(A)

¶10 Wife contends the statutory deadline for enforcing a spousal maintenance order established by A.R.S. § 25-553(A) has no application in this case. Specifically, Wife argues the decree did not expressly identify dates of commencement and termination, and the spousal maintenance order therefore remains in effect until Husband pays $48,000 (and accruing interest) in full.

¶11 "The interpretation of a statute is a question of law that we review de novo." *Bonito Partners, L.L.C. v. City of Flagstaff*, 229 Ariz. 75, 83, ¶ 30 (App. 2012). In interpreting a statute, we "look[] first to the statutory language itself." *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶ 8 (2013). As set forth in A.R.S. § 25-553(A):

> The person to whom the spousal maintenance obligation is owed may file a request for judgment for spousal maintenance arrearages not later than three years after the date the spousal maintenance order terminates. In that proceeding there is no bar to establishing a money judgment for all of the unpaid spousal maintenance arrearages.

In this case, the decree ordered Husband to pay Wife spousal maintenance "in the amount of One Thousand Dollars ($1,000.00) per month for a period of four (4) years." Contrary to Wife's argument, absent express language delaying the commencement of a spousal maintenance order, the obligation to pay begins when the decree is entered. Thus, when the trial court issued the decree in June 2003, the first monthly spousal maintenance payment

was due the following month.  This interpretation is consistent with Wife's claim for monetary relief, as she is seeking interest on missed payments as of July 2003.

**¶12**　　　　Under the statute, a party owed spousal maintenance "may file a request for judgment for spousal maintenance arrearages not later than three years after the date the spousal maintenance order terminates." A.R.S. § 25-553(A).  In this case, the spousal maintenance order terminated, by operation of law, when the four-year period specified in the decree ended.  Thus, applying the plain language of A.R.S. § 25-553(A), Wife was authorized to seek a judgment until July 2010, and after that, was procedurally barred from pursuing such a remedy.

### C.　　Extension by Agreement

**¶13**　　　　Wife alternatively argues the parties entered an agreement enforceable under Rule 69 that "extend[ed] the termination of the spousal maintenance payments."[1]  As evidence of this agreement, Wife cites email exchanges in which she claims that "Husband [made] an unambiguous agreement to make additional spousal maintenance payments."   Wife asserts she "demonstrated her acceptance of the agreement by not filing an enforcement action (prior to May 23, 2014)."

**¶14**　　　　As provided by Rule 69(A)(1), an "agreement between the parties shall be valid and binding if the agreement is in writing[.]"  We interpret procedural rules de novo.  *Aksamit v. Krahn,* 224 Ariz. 68, 70, ¶ 8 (App. 2010).

**¶15**　　　　Even assuming that the parties' exchange of email satisfies the "writing" requirement of Rule 69(A)(1), the record does not reflect the parties reached any agreement extending the operative period of the spousal maintenance order.   An agreement is formed only when a manifestation of mutual assent occurs "based on objective evidence, not the hidden intent of the parties."  *Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 474 (1990).  In 2011, Husband sent Wife an email apologizing for not making payments, explaining he had been out of work, and stating "[a]s

---

[1]　　　Husband argues Wife waived any Rule 69 argument by failing to raise it in the trial court.  Although Wife failed to specifically reference Rule 69, she did advance the substance of the claim that the parties, through their email exchanges, had agreed to extend the operative period of the spousal maintenance order.  We therefore address her appellate argument alleging a valid Rule 69 agreement.

soon as I'm able, I will start paying again." In 2012, Husband sent Wife an email stating he would pay her $1,000 and explaining he obtained new employment and expected to make payments "routinely" going forward. In 2013, Husband sent Wife an email informing her he had sent her $500. Later in 2013, Wife informed Husband she would consider the matter "paid in full" if Husband paid her $20,000, but Husband responded that he had "no assets." Neither Husband nor Wife mentioned extending the operative period of the spousal maintenance order or the time in which Wife could pursue an enforcement action in any email communication. In February 2014, Wife emailed Husband that she would "file with the courts now" to obtain the unpaid spousal maintenance payments. In July 2014, after Wife filed the petition to enforce spousal maintenance, Husband emailed Wife a "proposed" settlement offer of $7,200 to be paid over twelve months at $600 per month, but Wife never responded.

¶16        Based on this record, Husband did not agree to waive A.R.S. § 25-553(A) or otherwise extend the operation of the spousal maintenance order. Instead, the email exchanges demonstrate that Husband acknowledged he failed to pay Wife as required and hoped he would be able to do so in the future. Although settlement offers were made, they were rejected expressly (in 2013) or impliedly (in 2014, when Wife continued to pursue an enforcement order for an award far greater than Husband's $7,200 offer). Moreover, Wife does not argue, and the record does not reflect, that Husband entered a contract with her to pay her any amount that might be enforceable outside of the spousal maintenance statutes. Thus, nothing in the record supports Wife's claim that the parties reached a Rule 69 agreement halting application of the three-year limitations period prescribed by A.R.S. § 25-553(A).

## D.    Application of A.R.S. § 25-553(C)

¶17        Wife contends that because she disputes termination of the spousal maintenance order, a summary judgment ruling based on the application of A.R.S. § 25-553(A) was barred by § 25-553(C). When construing a statute, "we examine its individual provisions in the context of the entire statute to achieve a consistent interpretation" and strive to give effect to each word or phrase of the statute. *State v. Gaynor-Fonte*, 211 Ariz. 516, 518, ¶ 13 (App. 2005) (citations omitted); *Dowling v. Stapley,* 218 Ariz. 80, 84, ¶ 8 (App. 2008). In addition, we interpret statutes to give them a fair and sensible meaning and to avoid absurd results. *Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511, ¶ 15 (App. 2003).

**¶18** Pursuant to A.R.S. § 25-553(C), when "*termination of the spousal maintenance order is disputed*, this section shall be liberally construed to effect its intention of diminishing the limitation on the collection of spousal maintenance arrearages." (Emphasis added.) According to Wife, a claim that a spousal maintenance order never terminated is sufficient to survive a request for dismissal predicated on application of § 25-553(A)'s time bar. Although the term "disputed" is neither defined nor qualified, § 25-553 as a whole would be rendered absurd if an unsubstantiated claim that a spousal maintenance order is still due and owing could thwart application of § 25-553(A)'s procedural bar. Instead, construing subsection (C) in a reasonable manner and consistent with subsection (A), the "dispute" must be supported by competent evidence showing that the support obligation did not terminate.

**¶19** In this case, the language of the spousal maintenance order is unambiguous. Husband's obligation commenced at the time the consent decree was entered and terminated, by operation of law, four years later. Wife submitted her evidence of a Rule 69 agreement, and has not claimed, either in the trial court or on appeal, that any additional evidence of an agreement could be procured through discovery. Thus, the trial court had all the relevant evidence before it and properly concluded that the parties did not reach a Rule 69 agreement that would support Wife's claim that the spousal maintenance order never terminated. On this record, Wife has not shown that § 25-553(C) prevented the trial court from dismissing Wife's petition based on § 25-553(A).

### E. Policy Considerations

**¶20** Wife argues "there is no reason to distinguish the collection of spousal maintenance from child support, as long as the result can be reconciled within the statutory framework." Citing A.R.S. § 25-503(J), which governs the collection of child support arrearages following the termination of a child support order and places a burden on an obligor to demonstrate that the obligee "unreasonably delay[ed] in attempting to collect" arrearages before a statute of limitations will be imposed, Wife asserts that a similar burden should be placed on the obligor of a spousal maintenance order, through application of A.R.S. § 25-553(C).

**¶21** In 2005, A.R.S. § 25-503(I) (later redesignated A.R.S. § 25-503(J)) provided as follows:

> The department or its agent or a party entitled to receive support may file a request for judgment for support

arrearages not later than three years after the emancipation of all of the children who were the subject of the court order. In such a proceeding there is no bar to establishing a money judgment for all of the unpaid child support arrearages for all of the children who were the subject of the court order. Notwithstanding any other law, formal written judgments for support and for associated costs and attorney fees are exempt from renewal and are enforceable until paid in full. If emancipation is disputed, this subsection shall be liberally construed to effect its intention of diminishing the limitation on the collection of child support arrearages.

Construing this statute, our supreme court concluded that the legislature had made the "policy determination" that child support obligations "upon which no request has been made for a written judgment within three years of emancipation . . . should expire." *Ariz. Dep't. of Econ. Sec. v. Hayden*, 210 Ariz. 522, 526, ¶ 17 (2005). In reaching this conclusion, the court explained that the "policy encourages a reasonably prompt accounting of the support arrearage before relevant evidence becomes hard to obtain or unavailable. It also serves as notice to the obligor and creditors of the obligor of the amount of the outstanding debt." *Id*. at 526-27, ¶ 17.

**¶22** Soon after *Hayden*, the legislature substantively modified A.R.S. § 25-503, removing the three-year limitation and placing a burden on the obligor to prove unreasonable delay if the obligee seeks child support arrearages more than ten years after emancipation of the youngest child. 2006 Ariz. Sess. Laws, ch. 209, § 1. Notwithstanding the extensive similarity in language between the statutes governing spousal maintenance arrearages and child support arrearages at that time, the legislature elected not to similarly modify A.R.S. § 25-553.

**¶23** The continuing three-year limitation on the collection of spousal maintenance arrearages is consistent with the accounting and notice factors recognized in *Hayden*, 210 Ariz. at 526-27, ¶ 17. Additionally, allowing a protracted period for recovery of arrearages is contrary to the policy underpinning spousal maintenance, namely, to encourage and assist a spouse's independence within a limited timeframe. *See Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989) (explaining the purpose of spousal maintenance "is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance"); *Rainwater v. Rainwater*, 177 Ariz. 500, 503-04 (App. 1993) (recognizing that public policy favors limiting the duration of spousal maintenance to encourage a "transition toward independence"). Moreover, nothing in

A.R.S. § 25-553(C) suggests an evidentiary burden on the obligor should be read into the statute. *See Collins v. Stockwell,* 137 Ariz. 416, 420 (1983) ("Courts will not read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself.").[2]

## CONCLUSION

**¶24**       Because Wife's petition for enforcement of spousal maintenance was filed after the three-year statute of limitation governing such actions had expired, we affirm the trial court's dismissal of her petition. In the exercise of our discretion, we deny both parties' requests for attorneys' fees under A.R.S. § 25-324.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[2]       Wife also asserts the trial court erred by denying her motion for new trial; however, because the issues she raised mirror those we have addressed above, the court did not err in denying Wife's motion. *See Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10 (App. 2009) (noting that a court errs if, in reaching its decision, it applies an erroneous rule of law).