NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

———————————————

In re the Marriage of:

TAMMY LYNN PRINCE, *Petitioner/Appellee*,

*v.*

KENDALL WILLIAM PRINCE, *Respondent/Appellant*.

No. 1 CA-CV 19-0565 FC
FILED 8-25-2020

———————————————

Appeal from the Superior Court in Maricopa County
No. FC2015-090434

The Honorable Joan M. Sinclair, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED IN PART AND
GRANTED IN PART; REMANDED IN PART**

———————————————

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Erica Gadberry
*Counsel for Petitioner/Appellee*

Rowley Chapman & Barney, Ltd. Attorneys, Mesa
By Alexander R. Arpad, Joshua R. Boyle
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

¶1        Kendall Prince ("Father") appeals the family court's ruling in favor of Tammy Prince ("Mother") on cross petitions for contempt and enforcement of a consent decree. We treat the appeal as a petition for special action and accept jurisdiction. We deny relief in part, grant relief in part, and remand in part.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Father married in 1985 and divorced in 2015 by consent decree ("decree"). At the time of divorce, the parties had two minor children, as well as an adult child unable to live independently, or be self-supporting, who received Supplemental Security Income ("SSI").

¶3        In July 2015, before the decree was filed, Father's counsel sent a letter to Mother, accompanied by the decree already signed by Father. The letter attempted to finalize a comprehensive divorce settlement and proposed particulars not included within the decree, such as: (1) extending the length of child support payments for the minor children six months beyond the youngest child's emancipation; and (2) a monthly support payment, when in Mother's care, for the adult child on SSI, above and beyond the child support payment for the minor children.

¶4        Regarding the support payment for the adult child, the letter indicated a clear preference to omit any mention of the same in the decree to ensure the adult child's SSI benefit would not be jeopardized, which Father anticipated might otherwise occur. The letter confirmed the total combined support and maintenance payments Mother would receive to be $12,000 in those months the adult child lived with Mother, and $10,650 in all other months. Mother subsequently signed the decree. Following the family court's endorsement, the decree was filed with the clerk's office on August 6, 2015.

¶5        Per the terms of the decree, Father agreed to pay Mother directly $1,350 each month for child support of the two minor children, as

well as $9,300 per month in spousal maintenance for 48 months (January 2015 through December 2018). As contemplated in the July 2015 letter, the decree made no mention of the monthly support payment proposed for the adult child on SSI, but did provide that "[a]ny financial benefits associated with [the adult child] will follow [him] whether he lives with Mother, Father or in a separate care facility." The parenting plan, incorporated into the decree, further provided:

> ENTIRE AGREEMENT: This Parenting Plan is intended to be a full, complete and final agreement between the parties mentioned herein and supersedes all prior understandings or agreements, whether oral or in writing, pertaining to the subject matter contained herein.

¶6　　　　The property settlement agreement, also incorporated into the decree, further awarded Mother the marital residence as her sole and separate property, but required Father to pay off a Home Equity Line of Credit ("HELOC") associated with the residence by the end of 2018. In 2016, Mother sold the residence and used sale proceeds to pay off the HELOC.

¶7　　　　When Father failed to reimburse Mother for the paid off HELOC by the end of 2018, Mother filed a petition for contempt and enforcement in January 2019 seeking reimbursement for the $121,232.32 she paid to satisfy the HELOC. Father filed his own petition for contempt and enforcement alleging Mother failed to provide Father with the SSI payments for their adult child while in Father's care, and sought credit for overpayment of child support and spousal maintenance towards any monies he owed for the HELOC.

¶8　　　　At the evidentiary hearing, over Father's objection, the family court allowed the admission of the July 2015 letter into evidence, treating it as a Rule 69 agreement. *See* Ariz. R. Fam. Law P. 69. The court concluded that Father owed Mother the entirety of the HELOC, had made no overpayment of child support or spousal maintenance, and owed Mother half of the December 2018 spousal maintenance payment.

¶9　　　　Father appealed. However, the denial of a petition for contempt is not appealable. *See Berry v. Supreme Court (Martone)*, 163 Ariz. 507, 508 (App. 1989). In the exercise of our discretion, we treat Father's appeal as a petition for special action and accept jurisdiction. *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001).

**DISCUSSION**

*I. Rule 69 Agreement*

**¶10** Father contends the family court erred by treating the July 2015 letter as a Rule 69 agreement. We interpret procedural rules *de novo*. *Ames v. Ames*, 239 Ariz. 246, 249, ¶ 14 (App. 2016).

**¶11** In 2015, at the time of divorce, Rule 69 required that an agreement between the parties be "in writing," or be "set forth on the record" or "on any audio recording device before a mediator or [at a] settlement conference." Ariz. Supreme Ct. No. R-09-0042, Order Amending Rules 5.1, 47, 67(b), 69, 74 and 78, Arizona Rules of Family Law Procedure (Oct. 2, 2010), https://www.azcourts.gov/Portals/20/2010Rules/R090042.pdf. That rule was amended, effective January 1, 2019, and now requires, in relevant part, that the written agreement also be "signed by the parties personally or by counsel on a party's behalf." Ariz. R. Fam. Law P. 69(a)(1).

**¶12** Father argues the current version of Rule 69 governs because the cross petitions for contempt were filed after January 1, 2019. Mother argues the former version of the rule controls because the letter was written years before the rule's amendment.

**¶13** The current version of Rule 69 "appl[ies] to all actions filed on or after January 1, 2019." Ariz. Supreme Ct. No. R-17-0054, Order Amending the Arizona Rules of Family Law Procedure, etc. (Aug. 30, 2018), https://www.azcourts.gov/Portals/20/2018%20Aug%20Rules/R170054.PDF?ver=2018-08-30-122516-103. The filing of cross petitions for contempt in 2019 did not initiate a new "action." Rather, the petitions sought to enforce an order from an action filed in 2015. Because the action was filed years before the amended rule took effect, the former version of Rule 69, not the current, appropriately governs.

**¶14** Rule 69 was adapted from Arizona Civil Rule of Procedure 80(d). *See Murray v. Murray*, 239 Ariz. 174, 178, ¶ 13 (App. 2016). Consequently, we look to cases interpreting Rule 80(d) for guidance in determining whether an agreement exists. *See id.* (citation omitted). For an agreement to be enforceable under Rule 80(d), both the terms of the agreement and the manifestation of assent, evinced by the parties themselves or through counsel, must be in writing." *See Robertson v. Alling*, 237 Ariz. 345, 348, ¶ 14 (2015).

¶15        At first glance, the July 2015 letter purports to be simply a settlement letter. Paragraph one indicates:

> Please be advised that this letter is being sent pursuant to Rule 408, *Arizona Rules of Evidence*, and is for settlement purposes only and shall not be used at any court proceedings in this matter, except to the extent necessary to establish the reasonableness of attorney's fees and costs on my client's behalf.

And, while Father's manifestation of assent to the terms of both the letter, and the accompanying consent decree he signed, were clearly established, it is not until the final language of the letter that our analysis is complete:

> [T]his is [Father's] final attempt to settle this matter . . . *If you are in agreement then please sign the attached documents and submit them to the Court.*

(Emphasis added.) Mother did just that; she signed the attached documents (the consent decree), submitted them to the family court, and in doing so manifested her assent, not just to the consent decree, but also to the additional terms in the letter which the parties intentionally omitted from the decree. The letter was effectively converted to a Rule 69 agreement.

¶16        And although the parenting plan, incorporated into the decree, declared it was "intended to be a full, complete and final agreement between the parties . . . [superseding] all prior understandings or agreements, whether oral or in writing" as to parenting time, support and related matters, it is clear the parties intended the additional terms of the letter to be part of a comprehensive agreement, which they expressly and intentionally omitted from the decree. The following excerpts from the letter are illustrative of the parties' intention to be bound by additional terms:

> [Excerpt 1]: Spousal maintenance will be $9,300.00 for 48 months unless you remarry or either of you pass away. The total combined support you are to receive is to be $12,000.00. Child support for the two youngest children is $1,350 and the support for [adult child], as explained below, is $1,350. Thus, the total of those three amounts is $12,000.00. When [minor child 1] emancipates the child support will not reduce and will continue to be $1,350 until December 2018, even though [minor child 2] will have emancipated at that time.

> [Excerpt 2]: [Adult child] is listed as possibly being disabled and unable to live independently. If either of you were to pay child support for [adult child] to the other parent then [adult child's] Social Security would likely cease. [Father] is still willing to pay $1,350 if [adult child] is living with you but will pay you separately. [Father] will pay but to alleviate any concern: if you are not receiving payment from [Father] then you could take this matter to court in the future to establish child support.

¶17        Because it is clear the parties manifested their assent to be bound by the additional terms contained within the letter, the family court did not err in concluding the July 2015 letter constituted a Rule 69 agreement. Further, because the letter was an agreement, not simply a settlement letter as Father contends, the court also did not err in overruling Father's objection to its admission under Arizona Rule of Evidence 408.[1]

*II.        Allocation of Adult Child's Supplemental Security Income*

¶18        Mother, who is the representative payee of the adult child's SSI benefits, failed to provide Father will those benefits in months where the adult child lived with Father. Father contends the family court erred by refusing to enforce allocation of the adult child's SSI benefits per the terms of the decree, which provides: "[a]ny financial benefits associated with [the adult child] will follow [him] whether he lives with Mother, Father or in a separate care facility."

¶19        SSI benefits are federal benefits, administered and regulated by the federal government through the Social Security Administration ("SSA"). And, because "Congress [has] intended the federal government to occupy [this area] exclusively," "[s]tate law is preempted by federal law." *See Hutto v. Francisco*, 210 Ariz. 88, 90, ¶ 7 (App. 2005). Stated differently, this court previously held that Arizona courts lack authority to review the management of derivative Social Security benefits. *Peace v. Peace*, 234 Ariz. 546, 548, ¶ 9 (App. 2014) (holding, *inter alia*, "[b]ecause federal law occupies

---

[1] Rule 408 prohibits the admission of "statement[s] made during compromise negotiations." *See* Ariz. R. Evid. 408(a)(2). In determining the admissibility and relevance of evidence, the trial court is invested with considerable discretion, *see Burgbacher v. Mellor*, 112 Ariz. 481, 483 (1975), which we review for an abuse of discretion, *see Selby v. Savard*, 134 Ariz. 222, 227 (1982).

the field, a family court is preempted from reviewing the [management of derivative Social Security benefits] of a representative payee").

**¶20** Thus, although the terms of the decree direct that the adult child's "financial benefits . . . will follow [him] whether he lives with Mother, Father or in a separate care facility," the family court lacked jurisdiction to enforce this provision of the decree. The court had no authority to make any decision regarding the SSI benefit. Consequently, we do not address the merits of Father's argument.

III.    *Overpayment of Child Support and Spousal Maintenance Payments to Offset the HELOC*

**¶21** Father's final argument is that he made overpayments in child support and spousal maintenance to Mother, and those overpayments should be considered offsets toward the total HELOC obligation. We will affirm a family court's findings of fact unless they are clearly erroneous. *See* Ariz. R. Fam. Law P. 82(a)(5). Where conflicting evidence is presented, we defer to the court's evaluation of the credibility of witnesses. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13 (App. 1998); *see also* Ariz. R. Fam. Law P. 82(a)(5) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the credibility of witnesses.").

**¶22** Following the evidentiary hearing, the family court made findings relative to Father's support and maintenance payments:

> 39. [Father] claims he paid [Mother] $180,404.35 in 2015. Exhibit 18.
>
> 40. Upon review of this exhibit, the Court found that [Father] paid [Mother] $149,114.00. The Court only included amounts noted as being paid directly to [Mother] and omitted car insurance and other payments including the $350 payment that did not correspond to an amount owed for child support or spousal maintenance. The Court also included a $12,000 check noted on July 14th where it was handwritten in the record that this was a payment to "[Mother]."
>
> 41. [Father] claims he paid [Mother] $134,962.00 in 2016. Exhibit 19.
>
> 42. The Court agrees that [Father] paid [Mother] this amount of money in 2016.

43. [Father] claims he paid [Mother] $137,680.00 in 2017. Exhibit 20.

44. The Court reviewed this exhibit and found that [Father] paid [Mother] $137,500 in 2017. The Court omitted the $180 payment.

45. [Father] claims he paid [Mother] $121,500.00 in 2018. Exhibit 21.

46. The Court agrees that [Father] paid [Mother] this amount of money in 2018.

47. In reviewing [Father's] bank statements and his payments to [Mother], he clearly paid $12,000 on some months and approximately $10,650 on other months. On months where he paid [Mother] more than once, she returned the extra money back to him. Exhibit 18, p. 27; exhibit 19, p. 114; exhibit 21, pp. 319-320.

48. [Mother] testified that she did not dispute the amounts of the payments, but only the reason for those payments. She argues that the extra money paid was for the $1,350 that [Father] agreed to pay for [adult child] when he was in her care.

49. [Father] testified that he made extra payments to [Mother] and that these payments were for the HELOC.

50. The only documentation of any discussion between the parties as to extra payments being used to pay down the HELOC is in exhibit 27. That exhibit demonstrates only that this is [Father's] position, not that there is any agreement for this arrangement.

. . .

53. Based on this record, the Court does not find that there was any agreement between the parties for additional payments to be used to reduce the HELOC payment.

. . .

63. [Father] stated that the $10,650 and $12,000 payments were not reflective of when [adult child] was living with [Mother]. The Court did not find this testimony credible.

64. [Mother] testified that the $12,000 payments were for the months that [adult child] lived with her. She stated that there were no overpayments from [Father]. The Court found this testimony to be credible.

¶23 Most of the family court's findings are explained in detail, reference the exhibits relied upon, make determinations of credibility between the witnesses, and are supported by the record. And while Father argued he made additional payments to Mother not included within the court's totals, and that some of the payments he made were intended to be attributed towards the HELOC rather than support payments, the court exercised its discretion in assessing credibility between the witnesses.

¶24 However, with respect to those payments the family court concluded were made in support of the adult child, and thus not overpayments, the record does not support the court's conclusions. For example, the court indicated it was unable to determine which months adult child was with Mother, but then summarily concluded any payment above $10,650 was a support payment for adult child:

65. The Court finds that the parties were abiding by their prior agreements with [Father] paying an extra $1,350 for the months [adult child] was living with [Mother]. *Because there is insufficient evidence to demonstrate which months [adult child] lived with which parent, the extra $1,350 paid on some months to [Mother] was not an overpayment by [Father].*

(Emphasis added.)

¶25 By concluding there was "insufficient evidence to demonstrate the months [adult child] lived with which parent," while then categorically refusing to credit Father with any "overpayment" of support, the family court erred. On remand, the court should not categorize as support for adult child any monthly payment above the combined support and maintenance amount of $10,650 unless there is evidence that adult child was living with Mother during that particular month. To conclude otherwise would constitute error. In its discretion, the court may hold additional hearings to aid in obtaining additional evidence.

**CONCLUSION**

**¶26** For the foregoing reasons, we treat Father's appeal as a petition for special action and accept jurisdiction. We deny relief in part, grant relief in part, and remand in part. Mother and Father have each requested an award of attorneys' fees and costs pursuant to A.R.S. § 25-324. After considering the parties' financial resources and the reasonableness of their positions, in our discretion we deny both parties' requests.



AMY M. WOOD • Clerk of the Court
FILED:    AA